UNITED STATES v. PENA et al.

(District Court, D. Delaware. September 23, 1895.)

No. 2.

1. CRIMINAL LAW—SETTING ON FOOT MILITARY EXPEDITION—REV. ST. § 5286.

Rev. St. § 5286, imposing a penalty upon "every person who, within the territory of the United States * * * sets on foot * * * any military expedition * * * against * * * any foreign prince or state * * * with whom the United States are at peace,' does not prohibit the shipping of arms or ammunition or military equipments to a foreign country, nor forbid one or more individuals, singly or in unarmed associations, from leaving the United States for the purpose of joining in any military operations which are being carried on between other countries, or between different parties in the same country.

2. SAME—ELEMENTS OF THE OFFENSE.

A military expedition, within the statute, means a military organization of some kind, designated as infantry, cavalry, or artillery, officered and equipped, or in readiness to be officered and equipped, for active hostile operations; and preparing the means for such an organization would come within the statute, but to complete the offense it must be shown to have been done within the United States, and that the expedition was to be carried on from thence against the dominions or territory of a foreign state; and the mere fact that persons of the same nationality as others who are carrying on an insurrection in a foreign state, with which such persons are believed to be in sympathy, have gathered arms, and prepared to ship them, secretly, and under suspicious circumstances, is not alone sufficient for the conviction of such persons under the statute, without proof that such persons have set on foot a military expedition within the United States against such foreign state.

Lewis C. Vendergrift, U. S. Atty.

Herbert H. Ward, George Gray, Horatio S. Rubens, and Leon J. Benoit, for defendants.

WALES, District Judge (charging jury). The defendants, Braulio Pena and the 20 other persons who are named in this indictment, are charged with having violated section 5286 and section 5440 of the Revised Statutes of the United States. These sections read as follows:

"Sec. 5286. Every person who, within the territory or jurisdiction of the United States begins, or sets on foot, or provides or prepares the means for, any military expedition or enterprise, to be carried on from thence against the territory or dominions of any foreign prince or state, or of any colony, district, or people, with whom the United States are at peace, shall be deemed guilty of a high misdemeanor, and shall be fined not exceeding three thousand dollars, and imprisoned not more than three years."

"Sec. 5440. If two or more persons conspire either to commit any offence against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect

the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than one thousand dollars and not more than ten thousand dollars, and to imprisonment not more than three years."

The indictment contains 37 counts, which have been framed in such manner as to cover the specific and alternative offenses described in the law.   Several of the counts in the indictment, as it was originally returned by the grand jury, were found to be defective on being demurred to, but sufficient remain to put the defendants on trial.   The counts for a conspiracy have not been pressed, and, indeed, no separate or distinct evidence was produced in support of them.   The charges against the defendants are of a grave and important character, involving serious consequences to themselves, if proved, and directly affect the good faith of the government of the United States in preserving inviolate its treaty obligations and the laws of comity existing between all civilized countries.   It will be your duty, therefore, to carefully examine and consider the testimony which you have heard, and to decide fairly and impartially on the guilt or innocence of the accused.   And in order to assist you both in the investigation of the facts and in their application to the law of the case, the court will first direct your attention to the meaning and purpose of section 5286, which has just been read to you.   Briefly, this section is a portion of what is known as the "Neutrality Act," which was passed by congress as far back as April 20, 1818, and was, in fact, a declaration on the part of the government that it would, so far as its authority extended, prevent any part of its territory from being used as a basis for hostile military operations against any nation or country with which it was at peace.   From the date of its passage to the present time many occasions have arisen calling for the enforcement of the law, and the government has always been vigilant and prompt, as it has been in the case now before us, in bringing parties accused of violating any of its provisions to trial.   Not only the judicial branch, but also the state department, of the government, and its diplomatic representatives, have been frequently engaged in the interpretation of this act, so that its provisions may be said for the most part to have received a settled construction.   And this remark applies particularly to section 5286.   This section is designed to prohibit the beginning or setting on foot, or providing or preparing the means for, any military expedition or enterprise within the territory of the United States, to be carried on from thence against the territory or dominions of any foreign prince or state, or of any colony of people with whom the United States are at peace.

The first count in the indictment is a general one, following the language of the law.   The successive counts specify the different modes and ways by and in which the defendants are alleged to have violated the law, but you will notice that each count charges either that the defendants began, or set on foot, or provided the means for a military expedition or enterprise to be carried on against the dominions of the king of Spain, or against the Island of Cuba, "then and there being the territory of the king of Spain."   This section of the neutrality act does not prohibit the shipping of arms, or ammunition or of military equipments to a foreign country, nor does it even forbid

one or more individuals, singly or in unarmed associations, from leaving the United States for the purpose of joining in any military operations which are being carried on between other countries, or between different parties in the same country. In such cases the shipper and the volunteer would run the risk, the one of the capture of his property, and the other of the capture of his person. But in neither case would there be the setting on foot or providing the means for carrying on a military expedition from the territory of the United States within the meaning of this section. With this instruction as to the design and scope of the law, your inquiry will now be directed to the evidence which has been produced to establish the guilt of the defendants. In the first place, you will take notice of the proclamation of the president of the United States, dated the 12th day of June, 1895, which recites the existence in the Island of Cuba of "serious civil disturbances, accompanied by armed resistance to the authority of the established government of Spain, a power with which the United States are and desire to remain on terms of peace and amity." The proclamation also recites the substance of section 5286, which prohibits the citizens of the United States, as well as all other persons within and subject to its jurisdiction, from taking part in such disturbances adversely to such established government," * * * by setting on foot, or providing, or preparing the means for military enterprises to be carried on from the United States against such government." The proclamation concludes by warning all such citizens and persons to abstain from every violation of the law referred to, and enjoins upon all officers of the United States charged with the execution of the law the utmost diligence in preventing violations thereof, and in bringing to trial and punishment any offenders against the same. And here, gentlemen, it is proper to observe that, whatever may be the immediate outcome of the present trial, the prosecuting officer has done no more than his duty in preferring these charges, and in bringing the defendants before a jury to ascertain their guilt or innocence. Not to have done so would, perhaps, have amounted to official delinquency, for there were, at least prima facie, strong grounds for believing that the defendants had subjected themselves to the penalties of the law. It is now for you to decide whether they have done so or not.

The proof shows that on the 29th day of August, in the present year, the defendants assembled in Wilmington, and under cover of night went on board the tugboat Taurus, lying at Market street wharf, in the Christiana, and which some one of their number had previously chartered. On the same night they shipped on board the tug 27 boxes of freight, some of which had been brought from Philadelphia by Bush & Sons' Company, and the others had been carried from the store of De Soto Bros., in Wilmington, by the Charles Warner Company. The captain of the tug was ordered by Ralph De Soto, one of the defendants, to go out into the Delaware river, and to steam up and down the river between the mouth of the Christiana and Gordon Heights. until he should hear the signal of three whistles from a steamship outward bound, when he was at once to run the tug alongside, and transship the boxes. The tug

went back and forth on the river until long after daylight on the morning of the 30th of August without hearing any signal from the expected steamship, and until the agent of the owners of the Taurus came on board at Gordon Heights, and, fearing that he had done wrong in hiring the tug to the defendants, directed them to give it up. At the request of the defendants, some of them, with their boxes of freight and with their personal effects, were landed at Pennsgrove, in New Jersey. Here the boxes were left on the pier, to be forwarded to the address of De Soto Bros., Philadelphia, while the defendants were waiting for a passage to the same place, either by boat or railroad. The tug Taurus had just left the pier when the tug Meteor appeared, having on board the United States marshal for the district of Delaware, accompanied by a strong force of deputies. The marshal ordered the Taurus to turn back. The boxes were seized, and placed on the Taurus, and brought to Wilmington. The defendants were arrested by the marshal without any warrant, but they made no resistance, and entered no protest. The contents of the boxes, on examination, were found to consist of rifles, carbines, ammunition, haversacks, canteens, etc. There were no names or marks on the boxes to indicate to whom or where they were to be delivered. On a hearing before a United States commissioner the defendants were held to bail for their appearance at the coming term of this court.

Such, gentlemen, is the history of this case, as far as the evidence goes. There is no proof that the boxes were to be sent to the Island of Cuba, or that the defendants intended to take passage on an outward-bound vessel, which was destined for the same place. All that depends on conjecture and suspicion only. In fact, there was some evidence to negative any such inference. You will remember that, on the 29th of August, three steamships cleared at the port of Philadelphia for the West Indies, namely, the Holquin, for Port Antonio; the Laurodo, for Port Moran; and the Buckminster, for Havana. The Laurodo, in consequence of needed repairs to her boilers, did not sail until the 3d of September, but her captain and owner testified that they had no knowledge of any contract or arrangement to take men or freight on board after leaving Philadelphia. There is also an absence of evidence of any agreement or understanding being had with the master or owner of either of the other vessels. On this proof you have to say whether the defendants, or any of them, are guilty in manner and form as they stand indicted; that is, did all or any of them begin or set on foot, within the jurisdiction of the United States, or provide or prepare the means for, any military expedition or enterprise, to be carried on, from thence against the dominions of the king of Spain? The suspicious movements of the defendants on the night of the 29th of August, the devious and mysterious manner in which the arms and ammunition were brought to Wilmington, and taken out on the Taurus, to be transshipped to an unknown outward-bound steamer from Philadelphia, the omission of the defendants to make any explanation of their designs,—all these circumstances may reasonably excite

suspicion of wrongdoing. The appearance of the defendants, their nationality, their silence under arrest, the fact of an existing insurrection in Cuba, and the belief that they are in sympathy with the insurrectionary party, unsupported by other evidence, would not be sufficient to warrant a verdict of guilty. Before you can find such a verdict, you must be satisfied beyond a reasonable doubt by the proofs in the case—First. That the defendants, within the jurisdiction of the United States, began or set on foot, or provided the means for, a military expedition or enterprise. Second: And that such expedition or enterprise was to be carried on from the United States against the territory or dominions of the king of Spain. A military expedition or enterprise means a military organization of some kind, designated as infantry, cavalry, or artillery, officered and equipped, or in readiness to be officered and equipped, for active hostile operations; and the preparing the means for such an organization would undoubtedly come within the inhibition of the law. But this would constitute only one element or part of the offense charged against the defendants. To complete the offense, it must also be proved that the means were provided within the United States, and that the expedition was to be carried on from thence against the dominions or territory of the king of Spain.

You have heard the evidence, and the court has now given you such instructions in reference to the meaning of the law as will enable you to form a right decision on the facts; and it is only necessary to add that you must not allow public opinion or popular sympathy to influence your deliberations. A people struggling for freedom always attracts the admiration and awakens the ardent wishes for its success of the citizens of this republic, but thus far, in our history, it has been the policy of our government to abstain from rendering any active or material assistance to either party or faction in such contests, and the United States are bound by the most sacred obligations to prevent its own citizens or any other persons from making use of its territory for hostile operations against any government with which we are at peace. You have already been informed that the conspiracy counts have not been pressed by the district attorney, and you are now further instructed that, unless the defendants shall be found guilty on one or more of the other counts, they cannot, on the same evidence, be convicted of a conspiracy.