HORN v. MITCHELL, U. S. Marshal.

(Circuit Court of Appeals, First Circuit. April 27, 1916.)

No. 1154.

1. HABEAS CORPUS ☞90—PROCEEDING—HEARING ON PETITION.

On the filing of a petition for a writ of habeas corpus, setting out the facts and cause of detention, the court may properly consider, and determine upon the facts so presented, whether the prisoner, if brought before it, would be discharged.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 80; Dec. Dig. ☞90.]

2. CARRIERS ☞38—INTERSTATE TRANSPORTATION—CARRIAGE OF EXPLOSIVES.

Criminal Code (Act March 4, 1909, c. 321) §§ 232–236, 35 Stat. 1134–1136 (Comp. St. 1913, §§ 10402–10406), making it unlawful to transport explosives in interstate commerce on any vessel or vehicle operated by a common carrier and carrying passengers, are important regulations of commerce, designed for the protection of passengers and others, and as a safeguard for the prevention of the use of instrumentalities of interstate and foreign commerce in aid of crimes which involve the use of high explosives, and their violation was regarded by Congress as of such serious character as to rank as a felony.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 96, 97; Dec. Dig. ☞38.]

3. CARRIERS ☞38—OFFENSES AGAINST INTERSTATE COMMERCE—CARRIAGE OF EXPLOSIVES.

It is no defense to a charge of carrying explosives in a passenger vehicle operated by a common carrier in interstate commerce, in violation of Criminal Code, § 235, that the accused was an officer in the army of a foreign country engaged in war, and that the explosive was so carried for the purpose of being used in an alleged act of war in the enemy territory.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 96, 97; Dec. Dig. ☞38.]

4. CARRIERS ☞38—OFFENSES AGAINST INTERSTATE COMMERCE.

The mere fact that the accused held a commission in the army of his country raises no presumption that he was acting under the authority of his government, so as to raise any question of international law.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 96, 97; Dec. Dig. ☞38.]

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Petition by Werner Horn against John J. Mitchell, United States

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Marshal, for writ of habeas corpus. Petition denied (223 Fed. 549), and petitioner appeals. Affirmed.

Joseph F. O'Connell, of Boston, Mass. (James E. O'Connell and Daniel T. O'Connell, both of Boston, Mass., on the brief), for appellant.

George W. Anderson, U. S. Atty., of Boston, Mass. (Leo. A. Rogers, Sp. Asst. U. S. Atty., and Lewis Goldberg, Asst. U. S. Atty., both of Boston, Mass., on the brief), for appellee.

Before BINGHAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. We are of the opinion that the petition of Werner Horn, the appellant, for a writ of habeas corpus was properly denied, and that it appears from the petition itself that the petitioner is not entitled to the writ.

The petition sets out the cause of detention, and the issue of the writ was unnecessary to bring that upon the record by a return to a writ.

[1] In proceeding to consider and determine whether, upon the facts presented in the petition, the prisoner, if brought before the court, would be discharged, the learned District Judge followed an approved course, and did not in this respect deny to the petitioner any right secured to him by section 753 of the Revised Statutes. Frank v. Mangum, 237 U. S. 309, 332, 35 Sup. Ct. 582, 59 L. Ed. 969; Ex parte Milligan, 4 Wall. 2, 110, 111, 18 L. Ed. 281.

The petition represents that at the February term, 1915, of the United States District Court for the District of Massachusetts, an indictment was returned by the grand jury charging that the petitioner—

"did unlawfully, knowingly, willfully and feloniously transport and carry and convey certain explosives contrary to law and in violation of the United States statutes applicable to the transportation and conveyance of explosives."

[2] Such statutes are set forth in chapter 9 of the Criminal Code of the United States, which relates to offenses against foreign and interstate commerce. Sections 232 to 236, inclusive, relate to explosives.

These statutes are important regulations of commerce, designed for the protection of the lives of passengers and others, and must also be regarded as an important safeguard for the prevention of the use of instrumentalities of interstate and foreign commerce in aid of crimes which involve the use of high explosives, such as safe-breaking, bank robberies, and malicious injuries. See Ryan v. U. S., 216 Fed. 13, 132 C. C. A. 257.

As the postal service and the service of common carriers afford great facilities for the wide extension of legitimate business, so also, unless safeguarded, they would afford equally great facilities for the wide extension of acts of crime, or of negligent and reckless disregard of the safety of our citizens. It is necessary, therefore, for the United States strictly to regulate the use in interstate and foreign commerce of the service of common carriers, as well as the use of its own postal service.

The penalty for a violation of the statutes concerning explosives, as defined in section 235 of the Criminal Code, is a fine of not more than $2,000, or imprisonment not more than 18 months, or both. Under section 335 crimes so punishable shall be deemed felonies.

[3] We call attention to the fact that the indictment charges an offense regarded by Congress as of such serious character as to rank as a felony, because of the contention of the petitioner that it should be considered merely as a necessary part of, or as inseparable from, or as an incident or detail of, an act of war against Great Britain, which he claims is cognizable only by the law of nations, and thus affords him immunity from punishment under a charge of violation of the laws of the United States.

This contention, which, so far as we are informed, is without precedent, is stated in paragraph 35 of the amended petition, as follows:

"(35) That your petitioner is an officer in the army of the empire of Germany, to wit, a first lieutenant in the division of the aforesaid army known as the Landwehr; that a state of war exists between the empires of Great Britain and Germany, which state of war has been recognized by the President of the United States in an official proclamation; that your petitioner is accused of destroying part of the international bridge in the township of McAdam, province of New Brunswick and Dominion of Canada; that he is now held in custody by the respondent on the charge of carrying explosives illegally, which allegation, if true, is inseparably connected with the destruction of said bridge; that he is a subject and citizen of the empire of Germany and domiciled therein, and is being held in custody for the aforesaid act, which was done under his right, title, authority, privilege, protection, and exemption claimed under his commission as said officer as described aforesaid."

The accusation of acts done in the jurisdiction of His Britannic Majesty appears from the petition to comprise the crimes of the willful and unlawful destruction of a railroad, in destroying a part of a bridge belonging to the railroad of the Canadian Pacific Railway Company; the unlawful obstruction of a railroad, endangering human life; placing upon said bridge and causing to be exploded an explosive substance, with intent to render and rendering said bridge dangerous, etc.

The main contention now made is that the offense charged against Horn in the indictment pending in the District Court was itself an act of war, because of its "inseparable connection" with the alleged act of war against Great Britain, and therefore cognizable only by the law of nations.

It seems unnecessary to decide whether the petition sufficiently sets forth any acts, committed in Canadian territory, which would constitute an act of war against Great Britain. Even if the allegations of the petition are assumed to be sufficient to show that the destruction of the bridge, on the Canadian side, might be regarded as an act of war against Great Britain, committed on British territory, we think that it by no means follows that these allegations are sufficient to show that an act of war against Great Britain was committed within the district of Massachusetts, where the indictment was found.

It must be borne in mind that the United States statutes involved do not make illegal the transportation of explosives, but only their transportation on vessels or vehicles operated by a common carrier, and car-

rying passengers for hire (section 232, Criminal Code), or otherwise in violation of sections 233, 234, 235. The mode of conveyance, rather than the transportation itself, is the ground of offense. A disregard of the safety of fellow passengers on trains engaged in interstate commerce, and a violation of statutory regulations of interstate commerce, constitute the gravamen of the offense, and this is not necessarily connected with the transportation of explosives, and is not war against either the United States or Great Britain.

Though counsel urge that it was inseparably connected with, and a part of, the blowing up of the bridge, the petition as we read it, nowhere admits that Horn did blow up the bridge, nor alleges that the explosives which he is charged with transporting illegally were used in blowing up the bridge. Without an allegation that an act of war was, in fact, committed by Horn, the whole theory of an "inseparable connection" amounts only to making an act done in the United States a part of something which, so far as appears, may never have been done. Certainly an act done in the United States cannot be justified as a part, or incident, or detail, of an act of war upon Great Britain, which existed not in fact, but only in the verbal form of an accusation. To convert the offense charged into a justifiable act of war upon the theory of inseparable connection, we first must have facts to connect; therefore, to pursue the appellant's argument, we must assume that Horn did blow up the bridge before proceeding to examine further the question of whether there is a connection, and, if so, whether it is an inseparable connection, between this and his alleged disregard of the laws of the United States.

The connection between the use of prohibited means of transportation and the subsequent use of the explosive to destroy a bridge is remote. The act of war, if we may call it such, can be completely described without any reference to the mode in which the explosive was conveyed to the scene of its use. Whether the explosive was transported lawfully or unlawfully has no causal connection with its use or its effectiveness to destroy a bridge.

Likewise the offense against the United States may be fully described without any reference to the use of the explosive after transportation.

The connection, so far from being "inseparable," is wholly artificial, for the purpose of invoking a single ground of exemption for two separate acts.

A conviction under this indictment would not involve punishment for any act done in British territory. Neither an intent to use nor the use of the explosive on British territory, subsequent to its transportation in violation of the statutes of the United States, could form any part of the offense charged in the indictment, under which the guilty intent is the intent to carry, irrespective of any intent to use.

So, also, a conviction under the charges of acts done upon British territory would not involve punishment for the transportation of the explosive within the territory of the United States, nor would that constitute any part of the offense.

The two offenses charged, therefore, are clearly distinct and sepa-

rate, for they do not involve the same acts, nor parts of the same act; but each is complete in itself, without involving as a part or element any act or intent essential to the other. They differ completely in time and place and in the acts charged. Both in fact and in law the transactions are substantially different and separate.

In our opinion the allegations that the acts done in the United States are "necessarily connected" with, or inseparable from, the act of blowing up the bridge have no weight, but state merely an erroneous conclusion of law. This, we think, is a vital error underlying the whole contention of the appellant. The theory that what Horn did in the United States was a mere detail or incident of an act of war done in British territory by Germany against Great Britain would lead to the conclusion that neither Horn nor his government is responsible to the United States.

[4] The principle of international law which is invoked for Horn's protection is thus stated:

"That an individual forming part of a public force, and acting under the authority of his government, is not to be held answerable as a private trespasser or malefactor, is a principle of public law sanctioned by the usages of all civilized nations, and which the government of the United States has no inclination to dispute."

See 26 Wend. *683, quoting instructions of Webster, Secretary of State, to the Attorney General.

But this exemption of the individual is on the ground that his act was a national act of his sovereign, and thus to be dealt with between nations under the law of nations.

Upon what theory, then, is this act of Horn in the United States to be held a national act of his sovereign? There is no allegation that what he did in the United States or in Canada was specifically authorized or avowed by the appellant's government. He relies upon a commission as a first lieutenant of the Landwehr (second reserve) Pioneers, which is dated August 18, 1908; but this is insufficient to show that he had been called to active service, or had become a part of an armed force. Surely his government, upon the mere ground that it has issued such a commission, cannot, as a nation, be presumed to have authorized his acts either here or in Canada.

It is urged that implied authority is sufficient; but the holding of a commission of this kind is no basis for an implication either of authority in Horn or of responsibility of his government.

As the only authority asserted by Horn is under his commission, which, in our opinion, is no evidence of authority to do any acts as a belligerent within the United States, we find no ground for extending to him any of the privileges or exemptions which might result from a finding that his act was a national act. Due respect to his government would forbid us from imputing to it a national responsibility to the United States upon such facts as are set forth in the petition.

The appellant cites the well-known case of People v. McLeod, 25 Wend. 483, 37 Am. Dec. 328, and the commentaries upon that case in 26 Wend. 663 et seq.; but these have little bearing on the present case. See also Wharton's International Law Digest, vol. 1, § 21.

No principle of international law that was recognized by the United States in the correspondence with Great Britain over the attack upon the schooner Caroline is applicable to this case.

The fact that Horn holds such a commission as he relies upon, in our opinion, is insufficient to show authorization of an attack upon Great Britain in Canada; but even if such authority to attack a public enemy follows from such a commission, it affords no implication of authority for a violation of the laws of a neutral nation in a matter having so remote a relation to the proximate act of exploding an explosive substance in hostile territory.

The petition, in our opinion, fails entirely to show either express or implied national authority for doing the acts charged in the indictment; therefore no question of international law is involved, and the District Court has full jurisdiction to proceed to trial of the indictment found by its grand jury.

We agree with the contention of the United States attorney that, if the present petition cannot be maintained on its merits, it is immaterial whether an earlier petition to the same unmeritorious effect was or was not erroneously refused consideration. Our conclusion that the grounds upon which the appellant seeks a discharge are unsound cuts under all other questions raised. He fails to show that the acts for which he is indicted were done under compulsion or command of his sovereign. There is no question of punishing him for anything done in Canada; there is no question of double punishment for the same act. No defense which he may have against punishment for violation of the laws of another nation, or against extradition upon a charge of such offense, is taken away from him by a refusal of the writ of habeas corpus.

The petition contains many matters which, upon this appeal, we have no power to review. We may say, however, that in our opinion the grounds upon which he contested the jurisdiction of the commissioner were without substantial merit, and that he has had a full hearing upon the merits of his claim to immunity from trial upon the indictment.

The judgment of the District Court is affirmed.