UNITED STATES v. TAUSCHER et al.

(District Court, S. D. New York. June 12, 1916.)

No. 9–34.

NEUTRALITY LAWS ☞3—"MILITARY EXPEDITION, OR ENTERPRISE"—WHAT CONSTITUTES.

Where defendants conspired in the United States to blow up and destroy the Welland Canal in Canada, which was used by the King of Great Britain and Ireland for the transportation of supplies and munitions of war and the transportation of his armies and navies, by means of an expedition starting in the United States and equipped with explosives therein procured, they were guilty of conspiring to prepare a military expedition or enterprise against foreign prince or country with which the United States was at peace, contrary to Criminal Code (Act March 4, 1909, c. 321) § 13, 35 Stat. 1090 (Comp. St. 1913, § 10177), making such act an offense, for the project, being a bold and hazardous attempt to cripple military institutions in the British Empire, was a "military expedition or enterprise," though those composing it were not highly drilled soldiers.

[Ed. Note.—For other cases, see Neutrality Laws, Cent. Dig. §§ 3–8; Dec. Dig. ☞3.]

At Law. Hans Tauscher and others were charged with conspiracy to commit an offense against the United States. On demurrer to the indictment. Demurrer overruled.

H. Snowden Marshall, U. S. Atty., of New York City, Roger B. Wood and Ben A. Matthews, Asst. U. S. Attys., both of New York City.

Felix H. Levy, of New York City (McCombs, Wellman, Smyth & Ryan, of New York City, of counsel), for defendant Tauscher.

WOLVERTON, District Judge. The defendants Hans Tauscher, Franz Von Papen, Wolf Von Igel, Alfred A. Fritzen, and Constantine Covani, alias Govani Gonzales, are indicted by six counts. The first is for conspiracy to commit an offense against the United States, namely, the offense denounced by section 13 of the Criminal Code. The second charges that the defendants and certain other persons, referred to in the indictment as "said other persons," did—

"begin and set on foot, and provide and prepare the means for, a certain military enterprise, to be carried on from within the territory and jurisdiction of the United States against the territory and dominions of the King of Great Britain and Ireland, a foreign prince with whom the United States then were, ever since have been, and now are at peace, to wit, against the Dominion of Canada, being then and there the territory and dominion of the said King of Great Britain and Ireland."

The third count charges that the defendants did begin a certain military enterprise, etc., the fourth that they did set on foot, the fifth that they did provide means, and the sixth that they did prepare the means for a certain military enterprise, etc. With these variations, all the counts set forth alike the facts which it is thought constitute the offense denounced by section 13 of the Criminal Code.

To these several counts the defendant Tauscher has interposed a

demurrer, challenging the sufficiency thereof to state facts constituting an offense under section 13 of the Criminal Code. On the argument of the demurrer, and by the briefs filed, but one point is presented for decision, which is that the matters charged do not constitute a military enterprise within the meaning of the statute. The section reads:

"Whoever, within the territory or jurisdiction of the United States, begins, or sets on foot, or provides or prepares the means for, any military expedition or enterprise, to be carried on from thence against the territory or dominions of any foreign prince or state, or of any colony, district, or people, with whom the United States are at peace, shall be fined not more than three thousand dollars and imprisoned not more than three years."

The charge is that the defendants did begin, and set on foot, and provide and prepare the means for a certain military enterprise, stating whence and against what country it was to be carried on. Then it is stated that the purpose and intent of the alleged military enterprise were the crippling and obstructing of military operations of the King of Great Britain and Ireland, by certain means and methods which are specifically described; namely, the use of bombs, dynamite, and other explosives with which to blow up and destroy the Welland Canal, which was being used by the King of Great Britain and Ireland for the transportation of supplies and munitions of war, and for the transportation of his armies and navies. As a part of said military enterprise, Fritzen and Covani were to go from the United States to Canada, and to employ other men likewise to go from the United States to Canada, with the intention and for the purpose of engaging in and effecting the objects and designs thereof. Tauscher, Von Papen, and Von Igel were to furnish Fritzen and Covani and other persons with pistols and revolvers and ammunition therefor, and with bombs, dynamite, and other explosives, and with money and credit, for carrying out the enterprise.

Then it appears, by way of the alleged overt acts, that Wachendorf arranged for five subjects of the Emperor of Germany to report to him at the Southern district of New York to aid and assist in carrying out the enterprise; that Tauscher provided and caused to be delivered to Wachendorf 200 pounds of 60 per cent. dynamite; that Fritzen and Covani left New York City for Buffalo, N. Y.; and that Von Papen paid to Wachendorf, by check, $200. The especial criticism of the indictment is that it contains no allegation or charge that the defendants were organized or equipped as a military force or unit, or that they constituted a body of men acting together or under command.

The federal District Courts have from time to time dealt with the question of what constitutes a military expedition or enterprise. Some in their interpretation of the term have signified that it requires a high degree of military organization, men drilled as soldiers, with officers having a military title in command, and appropriately equipped for engaging in war. United States v. Pena (D. C.) 69 Fed. 983; United States v. Hart (C. C.) 74 Fed. 724. On the other hand, some have not applied the term with such strictness respecting military organization. The Supreme Court, in Wiborg v. United States, 163

U. S. 632, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289, has had occasion to analyze the holdings of the lower courts, and has discarded the ultra view respecting military organization. After alluding to the definition of a military expedition by lexicographers as comprising a journey or voyage of a body of persons having the position or character of soldiers for a specific warlike purpose, also a body and its outfit, and that of a military enterprise as a martial undertaking, involving the idea of a bold, arduous, and hazardous attempt, the court quotes, with apparent approval, Judge Judson's charge to the jury in the case of United States v. O'Sullivan, Fed. Cas. No. 15,975, as follows:

That before a jury can convict "it must be proved to their satisfaction that the expedition or enterprise was in its character military; or, in other words, it must have been shown by competent proof that the design, the end, the aim, and the purpose of the expedition, or enterprise, was some military service, some attack or invasion of another people or country, state, or colony, as a military force."

It also quotes with approval the language of Judge Maxey in charging the jury in United States v. Ybanez (C. C.) 53 Fed. 536, wherein he said:

"This statute does not require any particular number of men to band together to constitute the expedition or enterprise one of a military character. There may be divisions, brigades and regiments, or there may be companies or squads of men. Mere numbers do not conclusively fix and stamp the character of the expedition as military or otherwise. A few men may be deluded with the belief of their ability to overturn an existing government or empire, and, laboring under such delusion, they may enter upon the enterprise. * * * Evidence showing that the end and objects were hostile to or forcible against a nation at peace with the United States characterizes it, to all intents and purposes, as a military expedition or enterprise."

And in the end the court affirms an instruction of the trial court given in language following:

"In passing on the first question, it is necessary to understand what constitutes a military expedition within the meaning of this statute. For the purposes of this case, it is sufficient to say that any combination of men organized here to go to Cuba to make war upon its government, provided with arms and ammunition, we being at peace with Cuba, constitutes a military expedition. It is not necessary that the men shall be drilled, put in uniform, or prepared for efficient service, nor that they shall have been organized as or according to the tactics or rules which relate to what is known as infantry, artillery, or cavalry. It is sufficient that they shall have combined and organized here to go there and make war on a foreign government, and to have provided themselves with the means of doing so. I say 'provided themselves with the means of doing so,' because the evidence here shows that the men were so provided. Whether such provision, as by arming, etc., is necessary, need not be decided in this case. I will say, however, to counsel that, were that question required to be decided, I should hold that it is not necessary."

The courts that entertain the view that there shall be a complete and high degree of military organization minimize the element of an enterprise or expedition, when it seems to be the intendment of the statute that both elements shall concur, namely, that there shall be an enterprise or expedition, and that such enterprise or expedition shall be military in character. The purpose of the expedition may serve

as well to give cast to the military character as even the organization by which the enterprise is to be carried into effect. Thus a most completely organized military detachment of soldiers marching from a neutral into a belligerent country, simply to march in and then out again, without threat or purpose of attack in any direction upon the belligerent, or upon any of its institutions, while it might impinge upon international neutrality regulations, would not, it is believed, contravene the statute; nor would a wholly unorganized and irresponsible mob of persons going from a neutral into a belligerent state, with a purpose of 'committing depredations upon the latter's military institutions, alone constitute an infringement of the statute. But if there be a preconcerted plan of operations, with leadership, and a co-ordination of men and arms and munitions and other means for attacking the armies or navies of the belligerent, or crippling or destroying her military institutions, set on foot for the purpose and with the intention of so attacking the belligerent nation in either aspect, and thereby to render aid and assistance to the enemy, the military enterprise or expedition contemplated by the statute would seem to be complete. I am supported in this view by the charge of Judge Bradford to the jury in United States v. Murphy (D. C.) 84 Fed. 609, 614. His language, so far as it is applicable here, is as follows:

"Where a number of men, whether few or many, combine and band themselves together, and thereby organize themselves into a body, within the limits of the United States, with a common intent or purpose on their part at the time to proceed in a body to foreign territory, there to engage in carrying on armed hostilities, either by themselves or in co-operation with other forces, against the territory or dominions of any foreign power with which the United States is at peace, and with such intent or purpose proceed from the limits of the United States on their way to such territory, either provided with arms or implements of war, or intending and expecting and with preparation to secure them during transit, or before reaching the scene of hostilities, in such case all the essential elements of a military enterprise exist."

The indictment here shows a preconcerted plan, the persons charged and the "said other persons" acting together for one common purpose, that of attacking and destroying a military institution of a belligerent nation, all directed by a common leadership, and I am impressed that it is sufficient under the authorities.

The demurrer will be overruled.