## UNITED STATES v. SANDER et al.

(District Court, S. D. New York. March 14, 1917.)

NEUTRALITY LAWS ☞3—VIOLATION—"MILITARY ENTERPRISE."

    Under Criminal Code (Act March 4, 1909, c. 321) § 13, 35 Stat. 1090 (Comp. St. 1916, § 10177), declaring that whoever, within the territory or jurisdiction of the United States, begins or sets on foot, or provides or prepares the means for, any military expedition or enterprise to be carried on against the territory or dominion of any foreign prince or state, or any colony, district, or people with whom the United States are at peace, shall be punished, defendants, who sent from the United States a spy into the dominions of the United Kingdom of Great Britain and Ireland, with which the United States was at peace, for the purpose of eliciting military information for the benefit of Germany, which was at war with the United Kingdom, are guilty of a violation of the section, though only one spy was sent, the transaction constituting a "military enterprise," as distinguished from a "military expedition," which must be of a more substantial military character; and hence an indictment charging such acts is not subject to demurrer, as failing to state a cause of action.

    [Ed. Note.—For other cases, see Neutrality Laws, Cent. Dig. §§ 3–8.]

Albert A. Sander and others were indicted for violation of Criminal Code U. S., § 13. On demurrer. Demurrer overruled.

H. Snowden Marshall, U. S. Atty., of New York City.

Charles A. Oberwager, of New York City, for defendants.

AUGUSTUS N. HAND, District Judge. This is an indictment for violation of section 13 of the United States Criminal Code. The accusation is that the defendants unlawfully began, set on foot, provided, and prepared the means for a certain military enterprise to be carried on from within the territory and jurisdiction of the United States and against the territory and dominions of the king of the United Kingdom of Great Britain and Ireland, a foreign prince with whom the United States of America at all times mentioned in the indictment have been and now are at peace.

The indictment alleges that the defendants, and each of them, well knew and believed that for the purposes of carrying on the military operations by land and sea of the forces of the empire of Germany it was at all times desirable and necessary that spies should be sent within the borders of the said United Kingdom of Great Britain and

Ireland, and that spies should transmit from within said kingdom, to the military and naval officials of the empire of Germany, information concerning divers matters and things occurring within said United Kingdom of Great Britain and Ireland, such as the dates of the sailing of merchant ships, the conditions under which the civil and military population within the said kingdom were living, the apparent amount of foodstuffs available for consumption within the said United Kingdom, and the amount of distress and want that might be caused within the said kingdom by the efforts of the naval force of the empire of Germany to prevent the passage of ships to the ports of said United Kingdom of Great Britain and Ireland.

The indictment proceeds to allege that the defendants within the Southern district of New York did willfully, knowingly, unlawfully, and feloniously begin and set on foot a military enterprise to be carried on from the territory of the United States, to wit, to send from the Southern district of New York against said United Kingdom of Great Britain and Ireland spies who were to pretend to be solely engaged in writing articles for newspapers within the United States of America and elsewhere, and who were to be equipped with passports, letters, and documents indicating that they were, in truth and in fact, correspondents of newspapers within the United States of America, and thereby be enabled to sojourn within said United Kingdom, and who were there to obtain information regarding said various matters above set forth that would be of importance to the military and naval forces of the empire of Germany, and who were then to transmit said information so to be obtained and acquired by the use of secret and surreptitious means to persons who were to be sojourning in Holland and Denmark, and said persons so sojourning in Holland and Denmark were then to transmit the said information obtained by the said spies in England to the military and naval authorities of the empire of Germany, for the use of the said military and naval authorities in their military operations against the United Kingdom of Great Britain and Ireland.

The indictment further alleges that in pursuance of, and for the purpose of setting on foot, said military enterprise, and to effect the object thereof, the defendant Sander, on the 15th day of August, 1916, within the Southern district of New York, engaged and employed the defendant Bacon to go from the United States to the territory of the United Kingdom of Great Britain and Ireland, there to act as a spy to obtain, and acquire and transmit, information of the kind and character hereinbefore set forth; that for the purpose of setting on foot said military enterprise, and to effect the object thereof, the defendants Sander and Wunnenberg instructed defendant Bacon, and the said defendant Bacon learned from the defendants Sander and Wunnenberg, various plans and methods by which the said enterprise could be carried out and effected, and, among other things, the defendants Sander and Wunnenberg talked to the defendant Bacon, and the defendant Bacon learned from the defendants Sander and Wunnenberg, the use of a writing fluid which became invisible until certain chemicals were applied to the paper upon which the writing fluid

was used; and the said defendants Sander and Wunnenberg furnished the defendant Bacon a quantity of the writing fluid, and gave him information, which the defendant Bacon learned from Sander and Wunnenberg, as to the names of persons in Holland and Denmark to whom letters on apparently trivial subjects could be written and upon which letters, by use of the invisible writing fluid, information of military value could be transmitted to said persons in Holland and Denmark by defendant Bacon in England, to be by said person or persons in Holland and Denmark forwarded to the military authorities of the German Empire; the defendants Sander and Wunnenberg furnished the defendant Bacon sums of money sufficient to defray the expenses of his journey and his expenses while sojourning in Great Britain; that defendant Bacon on the 21st of August, 1916, in the Southern district of New York applied to the authorities of the United States for a passport to enable him to visit the countries of Great Britain, Holland, France, and Switzerland, in which said application he declared that he was to sail from the port of New York on board the vessel Niew Amsterdam on August 25, 1916; that the defendant Bacon, after he had received from defendants Sander and Wunnenberg the above instructions and the money above mentioned, sailed from the Southern district of New York on the 25th of August, 1916, thereafter sojourning in London and elsewhere within the said United Kingdom of Great Britain, pretending to be a newspaper correspondent and writer of magazine articles, but obtaining and collecting the information of the character above mentioned, and from time to time thereafter transmitting that information to divers persons then sojourning in Holland and Denmark, which information was by those persons transmitted to various officials of the empire of Germany.

The defendants Sander and Wunnenberg have demurred to the foregoing indictment on five different grounds. The only matter which it seems necessary for me to discuss is whether the indictment as a whole alleges a violation of section 13 of the United States Criminal Code, and that general objection comes down, in my opinion, to the single question as to whether the sending out of a spy or spies to the dominions of a country with which we are at peace comes within the prohibition of this statute.

There are numerous cases holding that the expedition or enterprise aimed at by this statute must be of a substantial military character; that if a number of men went upon it, they must answer in a fair way the description of soldiers, and must have some discipline, arms, and concert of action. These cases, I believe, all relate, however, to the portion of the statute which deals with a military expedition. This feature of the statute is distinguished from the language therein prohibiting a military enterprise, and the matter is discussed by the Supreme Court of the United States in Wiborg v. United States, 163 U. S. 632, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289. I think the test was properly laid down in this court by Judge Wolverton in the case of United States v. Tauscher (D. C.) 233 Fed. 597, and applied by me at the trial, and that test (although in the case of United States v. Tauscher there was a military expedition, as well as enterprise) is:

What is the substantial character of the act? Was the act one which can fairly be considered as an accompaniment of military operations, so intimately connected with them that it forms a natural, if not inevitable, part of such operations? And were the person or persons engaged in it such persons as are reasonably to be regarded as part of a military or warlike enterprise?

If I am right in this definition, it seems to me that no one can dispute that spies are, and from time immemorial have been, essential accompaniments of armies and military expeditions and enterprises of all kinds. I do not think that the fact that Bacon was the only person sent out as a spy, even though the allegation in the indictment that it was arranged to send others be disregarded, can make any difference. If we were dealing with a military expedition, the word would probably call for several persons. It cannot, for a moment, be contended that an aviator, who started from New York in an armed aeroplane alone to throw bombs upon the city of Montreal or the city of Mexico, would not be engaged in a military enterprise.

During the argument I illustrated my belief that spies are persons who may engage, and who do engage, in a military enterprise, by suggesting that, if those who besieged a city should send in a spy to obtain information as to the food supply, he would clearly be in the same category as any other soldier, excepting that he would suffer the death penalty by military authority when he was caught. In other words, the moment it is admitted (and the allegations of the indictment must be taken at their face value) that the defendant Bacon was a spy, that moment he becomes in every sense, so far as the statute is concerned, a soldier, and part of the military.

Nor do I mean to say that a person is not within the inhibitions of the act who is not within the precise category of a soldier or spy. The act prohibits a military enterprise, which the Supreme Court has defined as "a martial undertaking, involving the idea of a bold, arduous, and hazardous attempt." Wiborg v. United States, 163 U. S. 650, 16 Sup. Ct. 1134, 41 L. Ed. 289. It would seem evident that a person who inaugurates within the United States any act of a warlike nature, to be carried on thence against the territory or dominion of a foreign state with which this government is at peace, is denounced by the statute.

I have wished to point out that the words "military enterprise," while including a military expedition, have been held by the Supreme Court to give a wider scope to the statute than the latter term, and that a "military enterprise" may consequently include various undertakings by single individuals, as well as by a number of persons.

For the foregoing reasons the demurrer is overruled.