# IN THE MATTER OF HEINRICH LUBINUS, KARL HENTSCHEL, AND ROBERT AUER.

## ON APPLICATION FOR WRIT OF HABEAS CORPUS.

Law of Nations—Duty of Court.

 1. When alien enemies are brought before a court charged with an offense, the court cannot serve the momentary purposes of particular national interest, but must administer with indifference that justice which the law of nations holds out to independent states whether neutral or belligerent.

Alien Enemies—Bailable Offense.

 2. Section 1015 of the Revised Statutes of the United States does not apply to alien enemies in the actual naval service of a power with which the United States are at war, as laws are made ordinarily for a state of peace, and when the basic conditions change the applicability of the law also changes.

Alien Enemies—Bail—Offense Committed Before a State of War Existed.

 3. Members of the German Navy cannot be admitted to bail, as no member of a hostile army or navy can be at large in the United States on bail. Alien enemies who committed an offense before the declaration of war cannot be considered prisoners of war; they are prisoners of the civil authorities.

In the Matter of Lubinus.

Alien Enemies—Treatment of Prisoners.

> 4. The court will see to it, on the ground of humanity, that alien enemies who are prisoners of the United States are treated as all other prisoners are treated.

Opinion filed April 10, 1917.

_Mr. O. B. Frazer_ for petitioners.

_Mr. Miles M. Martin,_ District Attorney, for the United States.

HAMILTON, Judge, delivered the following opinion:

The matter comes up upon an application for habeas corpus by these three prisoners. The facts as the court gathers them from the agreement of counsel in argument and from the papers in the case seem to be as follows:

These three prisoners and certain others were upon the ship lying in the harbor of San Juan, known as K. D. 3, which was claimed to be a prize captured by the Karlsruhe of the German Navy from the British and brought into this port and interned here for the war. I think the court can take judicial knowledge to that extent. During the past few weeks or months there has been extreme tension between the government of the United States and the government of Germany.

Some days ago the President convened Congress and addressed them upon the subject of the relations with Germany, and in effect asked that a state of war be recognized as existing between the two countries. After this convocation of Congress and before Congress had acted on April 6, it seems that the sea

### In the Matter of Lubinus.

cocks of this vessel K. D. 3 were found open and the vessel sinking, and these three men with others were arrested, charged with being guilty of the offense involved. That would be under the Penal Code, § 37. These men, as I understand the facts, were removed from the vessel and brought on shore by the military authorities. They were charged with this offense, and by the military brought before the United States Commissioner. A hearing was had, and on the 9th day of April they were committed to the marshal of the district of Porto Rico and the keeper of the jail of San Juan. It is not in the petition of these three men claimed that they acted as members of the German Navy in what was done upon the K. D. 3. It seems that some protest was made before the Commissioner by the Spanish consul, who is in charge of German interests, but I do not understand that this offense as an act of war is presented before me. Of course I am not passing upon any fact whatever, but I am stating what seems to be set out in the papers. So that here is a case of men whose names show that they are Germans, whose residence, that is to say, where they have been staying, is on a German prize ship; so I think I can properly assume that they are Germans. That they are probably also members of the German Navy I do not think is essential; but it will be considered.

Under those facts they bring a petition for habeas corpus, and show that § 1015 of the Revised Statutes, Comp. Stat. 1916, § 1679, which is to be construed with § 37 of the Penal Code, makes this offense bailable. They ask that they be admitted to bail, and, as I take it, there is no question about their being able to give the bail. Those, then, are the facts before me. What should be done?

1. In the first place, there is this that is true. Lord Stowell,

while sitting in a celebrated prize case in England, made this memorable declaration: "In forming my judgment, I trust that it has not [for a moment] escaped my anxious recollection . . . what it is that the duty of my station calls for from me; namely, . . . not to deliver occasional and shifting opinions to serve present purposes of particular national interest, but to administer, with indifference, that justice which the law of nations holds out, without distinction, to independent states, some happening to be neutral and some to be belligerent. The seat of judicial authority is, indeed, locally here, in the belligerent country, according to the known law and practice of nations; but the law itself has no locality. It is [true] the duty of the person who sits here to determine this question exactly as he would determine the same question, if sitting at Stockholm; to assert no pretensions on the part of Great Britain which he would not allow to Sweden in the same circumstances; and to impose no duties on Sweden, as a neutral country, which he would not admit to belong to Great Britain in the same character." The Maria, 1 C. Rob. 350.

That idea and that principle will control the court as to neutrals and as to belligerents in appropriate cases. These men will, to the best of my power, receive the justice that they are entitled to, whatever that may be. There is no question of patriotism, there is no question of anything, of fear or favor or anything, except the justice which this court is sworn to administer.

2. In the second place, this court cannot fail to know that the circumstances at present are different from what they were a month ago. These persons who at that time were alien friends have now become alien enemies; and the question, for the court

In the Matter of Lubinus.

to decide is whether § 37 of the Penal Code, or § 1015 of the
Revised Statutes, applies to alien enemies of the character shown
to the satisfaction of the court by the facts of this case, that is
to say, aliens who are not only enemies, but in the actual naval
service of the German Empire, with whom the United States
have, since the commission of the alleged offense, come into a
state of war. Section 1015 is explicit in its words. There is no
question about that. Persons accused of committing certain of-
fenses shall be admitted to bail. But laws are made for each
country, and they are made ordinarily for a state of peace; and
when basic conditions change, the court has to decide whether
that influences not the administration of law but the applica-
bility of law; whether it is the same law then that it was in the
time of peace. I am constrained to think that § 1015 does not
apply to alien enemies. The offense in general is bailable, but
these alleged offenders are not. The Constitution of the United
States to some extent applies to aliens. It has been held that the
14th Amendment applies to Chinese who are not Americans and
never can become Americans. Yick Wo v. Hopkins, 118 U. S.
356, 30 L. ed. 220, 6 Sup. Ct. Rep. 1064; Wong Wing v. United
States, 163 U. S. 228, 41 L. ed. 140, 16 Sup. Ct. Rep. 977;
Li Sing v. United States, 180 U. S. 486, 45 L. ed. 634, 21 Sup.
Ct. Rep. 449. But I have not been cited, and I do not think I
can be cited, to any case that holds that alien enemies are to be
treated the same as alien friends. There arises something else
than simply the question of law as applied in ordinary times.
I do not think that these petitioners can successfully claim to
come within § 1015 under the circumstances, they being alien
enemies upon a German ship, and, if the complaint is true,
charged at least with doing something to that interned ship
which would be a crime by anybody else. I do not think they
stand in the same shoes. That being true, I think it would

In the Matter of Lubinus.

settle the application for habeas corpus; but I may go on and consider one or two other points.

3. Suppose I released them upon habeas corpus, that is to say, gave them right to give bond, what would be the result? The result would be one of two things. I would have to turn around under § 4069, Comp. Stat. 1916, § 7617, and the President's proclamation, and, under the facts before me, either deport them or make them give bail or confine them. If they are, by any possibility, members of the German Navy,—and at least there is a possibility of that in this case,—I certainly could not admit them to bail. No member of a hostile Army or Navy can be at large in the United States on bail. If there is any possibility of that result it would be absurd in this court to attempt to do any such thing. I could not admit them to bail under any circumstances. But it is suggested that they might be, by an order either admitting them to bail or some other order, remanded to the military authorities and treated as prisoners of war. That is not the basis of the application. I do not see how I can act upon that. Nor can I consider the military part of the machinery of this court. As I understand the facts, the military have turned them over to the civil authorities, and, if I release them, it is an absolute release on bond. Of course I do not pass on the question of their guilt; but, if they are guilty of anything, they are guilty of something before the declaration of war. The court knows as a matter of public knowledge that the German Emperor disclaimed up to recently being at war with the United States, and the act of Congress recognizing war does not relate back of the date April 6. The German Emperor claims the right to sink American vessels because they go into a part of the ocean which the German government has said they

In the Matter of Lubinus.

must not go into, and, if they disobey that, the German govern-
ment claims a right to sink them.  But Germany disclaimed be-
ing at war with the United States thereby, so what the prisoners
did before the United States declared war could not be con-
sidered an act of war.  I think it is taken out of the defense set
up in the Horn Case, where the offense charged was that of
attempting to blow up a bridge, and the defense was that the
prisoner was acting as a German soldier.  Horn v. Mitchell,
147 C. C. A. 13, 232 Fed. 819.  Somewhat similar and equally
unsuccessful was the claim of the prisoners in United States v.
Tauscher, 233 Fed. 597, as to injuring the Welland canal.  This
case at bar is much like that of sinking an interned ship at
Charleston upon the severing of diplomatic relations.  United
States v. Klattenhoff (unreported).  Neither that nor this was
an act of war.  · If it is not an act of war, I do not see how I
could send them to the military authorities.  To take an extreme
case to illustrate, suppose Admiral Von Tirpitz or Admiral Ca-
pelle came to Porto Rico and landed before a declaration of war,
drew a pistol and shot a man and killed him.  I am not saying
that this is possible as a human matter, but it is possible in
thought.  Could he on any ground at all be sent to the military
authorities?  I think not.  The fact that he is or was the head
of the German Navy would not make it any less a murder.  It
would not be an act of war when there was no existing war; so
it seems that, even if these men are members of the German
Navy, the same conclusion follows, that they have committed
what is called here a civil offense, and not a military offense;
and, if that is so, I cannot remand them to the military authori-
ties.

  4. It has been stated—there is no proof, but I am perfectly

In the Matter of Lubinus.

willing to take the statement of counsel—that the jail is not a comfortable place. Of course in one sense that goes without saying, but if the treatment of these prisoners or any other prisoners—I am not speaking of them as different from any others—is not what it should be, if they do not receive treatment which ordinary civil prisoners should receive under modern conditions, I should be very glad indeed to have that brought to my attention, and if it is so I would appreciate it if counsel would make an application, not for habeas corpus, but in regard to the treatment of the prisoners. Mere statements in argument I could hardly take up, but a written petition I would take up with the insular government, and I would see that something proper is done, because they are United States prisoners and they must be treated in an American manner. This is all that it is necessary to say in this connection. I am glad the point has been raised, and if there is anything in it I hope it will be put in writing so that I can take it up. That is not on the ground of habeas corpus, but on the ground of humanity, on the ground of treating these men as all prisoners should be treated, whether Germans in America, Americans in Germany, or Americans in America.

It follows that I cannot make any further orders in the case, except simply to remand the prisoners to the custody of the jailer and jail where they came from, to await the ordinary process of law.