### UNITED STATES v. YBANEZ.

(Circuit Court, W. D. Texas.    November Term, 1892.)

1. NEUTRALITY LAWS—MILITARY EXPEDITION—NUMBERS.
   Under Rev. St. § 5286, the military character of an expedition against a nation at peace with the United States may be determined by the designation of officers or leaders, the organization of men in regiments or companies or otherwise, and the purchase of military stores; but no particular number of men is necessary to complete the crime, nor is it necessary that such an expedition should actually set out, for the crime is completed by the mere organization, or any other step in the inception thereof.

2. SAME—CIRCUMSTANTIAL EVIDENCE.
   When the prosecution relies in part upon circumstantial evidence, the facts proved must all be consistent with, and point to, guilt, only, and must be inconsistent with innocence.

3. SAME—TESTIMONY OF ACCOMPLICES.
   An accomplice is a competent witness for the prosecution, but his testimony should be received with caution by the jury, and not regarded unless corroborated in some material part by unimpeachable evidence, but it is not necessary that he be corroborated as to all material points; and a person who is forced to join in such an expedition against his will is not an accomplice, within the rule.

4. CREDIBILITY OF WITNESSES.
   Where testimony is conflicting, the jury should consider, in determining what weight to attach to the testimony of witnesses, their means of information, their manner in testifying, the consistency of their testimony, and the interest they have in the result of the suit.

Indictment against Carmen Ybanez for violation of the neutrality laws by setting on foot a military expedition against the republic of Mexico.    Verdict, "Guilty," and sentence of three years in the penitentiary.

A. J. Evans, for the United States.
W. C. Cox, for defendant.

MAXEY, District Judge, (charging jury.)    The indictment contains two counts.    In the first count it is charged that the said Carmen

Ybanez did, on the 19th day of December, 1891, within the western district of Texas, and within the territory and jurisdiction of the United States, unlawfully begin a certain military expedition, to be carried on from thence against the territory and dominion of the republic of Mexico; the said United States being then at peace with the state and people of the said republic of Mexico. The second count charges that the said defendant did, on the 19th day of December, 1891, within the western district of Texas, and within the territory and jurisdiction of the United States, unlawfully, and with force and arms, set on foot a certain military enterprise, to be carried on from thence against the republic of Mexico; the said republic of Mexico being at peace with the United States. The statute upon which the indictment is predicated reads as follows:

"Every person who, within the territory or jurisdiction of the United States, begins or sets on foot, or provides or prepares the means for, any military expedition or enterprise, to be carried on from thence against the territory or dominion of any foreign prince or state, or of any colony, district, or people, with whom the United States are at peace, shall be deemed guilty of a high misdemeanor," etc. Rev. St. § 5286.

This law has been carefully considered by Judge Judson in the case of U. S. v. O'Sullivan, 9 N. Y. Leg. Obs. 257. His views, in the main, I will adopt, and give to you in charge, in this case.

Before the jury can convict on this indictment, it must be proved to their satisfaction that the expedition or enterprise was, in its character, military; or, in other words, it must have been shown, by competent proof, that the design, the end, the aim, and the purpose of the expedition or enterprise were some military service,—some attack or invasion of another people or country, state or colony, as a military force. The engagement of men to invade or attack another people or country by force and strong hand; the designation of officers or leaders; the classification and arrangement of men in regiments, squadrons, battalions, or companies; the division of men into infantry, cavalry, or riflemen; the purchase of military stores, such as powder or ball, for an expedition,—give character to the expedition itself, provided there is sufficient proof to satisfy the jury that they are to be used. But any expedition or enterprise in matters of pleasure, commerce, or business, of a civil nature, unattended by the design of an attack, invasion, or conquest, is wholly legal, and is not an expedition or enterprise within this act. To constitute an offense, under the law, there must have been a hostile intention connected with the act of beginning or setting on foot the expedition or enterprise. This intended hostility, or this intended physical movement, characterizes the beginning or setting on foot an expedition. The one makes it military; the other, not. How this distinctive character shall be shown depends upon the proof. The mere fact that men, armed with rifles, and supplied with ammunition, crossed the Rio Grande river from the territory of the United States into Mexico, would not be sufficient, of itself, to constitute a military enterprise with hostile intent; and we should require proof what they were to do, and what their destination was. Without such qualifying proof, the expedition might still be lawful; but with it, its military character

might be established. The object of the expedition is an important thing to be considered. A specious covering, an artifice, secret movements, or deceptive proceedings may aid somewhat in fixing the true character or nature of the act. The term "expedition," employed in the statute, is used to signify a march or voyage with martial or hostile intentions. The term "enterprise" means an undertaking of hazard; an arduous attempt. "Begin" is to do the first act; to enter upon. We may say, with all propriety, that to begin an enterprise is to take the first step, the initiatory movement of an enterprise, the very formation and commencement of an expedition. To "set on foot" is to arrange; to place in order; to set forward; to put in the way of being ready. After these proofs are made out, the prosecution must further show that the beginning, the setting on foot, of such expedition or enterprise was within the territory or jurisdiction of the United States, and to be carried on from thence against the territory or dominion of the republic of Mexico. That the United States are at peace with Mexico is a fact well known, and does not require proof. You will see, by careful attention to this law, that there are certain acts which are declared to be unlawful, and which are prohibited by the statute, to wit, to begin an expedition; to "set on foot" an enterprise,—the expedition or enterprise, in either case, having reference to one of a military character.

It is not necessary that both of these distinct provisions shall be violated, to constitute the offense. The proof of either one of them will be deemed sufficient. They are put in the alternative. It is not essential to the case that the expedition should start, much less that it should be accomplished. To "begin" is not to finish; to "set on foot" is not to accomplish. The language of the statute is very comprehensive and peremptory. It brands as an offense against the government the first effort or proposal by individuals to get up a military enterprise in this country against a foreign one. It does not wait for the project to be consummated by any formal array or organization of forces, or declaration of war, but strikes at the inception of the purpose, in the first incipient step taken with a view to the enterprise, by their engaging men, munitions of war, means of transportation, or funds for its maintenance. 2 Whart. Crim. Law, (5th Ed.) pp. 519–525. This statute does not require any particular number of men to band together to constitute the expedition or enterprise one of a military character. There may be divisions, brigades, and regiments, or there may be companies or squads of men. Mere numbers do not conclusively fix and stamp the character of the expedition as military or otherwise. A few men may be deluded with the belief of their ability to overturn an existing government or empire, and, laboring under such delusion, they may enter upon the enterprise. Now, if a few men, whether 25, 50, or 200, "begin" or "set on foot," within the territory or jurisdiction of the United States, a military expedition or enterprise, to be carried on from thence—that is, from the territory or jurisdiction of the United States—against the republic of Mexico, they would be guilty of an offense against the statute. The proof must establish in your minds the fact that the expedition or enterprise was of a military character; and when the

evidence shows that the end and object were hostile to or forcible against the republic of Mexico, then it would be, to all intents and purposes, a military expedition. Again, the prosecution is bound to prove that the act of beginning or setting on foot a military expedition or enterprise was within the territory or jurisdiction of the United States; and you are instructed, in this connection, that the western district of Texas is within the territory and jurisdiction of the United States. And the proof must further show that the expedition or enterprise was to be carried on from the territory or jurisdiction of the United States against the republic of Mexico.

1. From the evidence, you must be satisfied, beyond a reasonable doubt, that the defendant began a military expedition, or set on foot a military enterprise, in the western district of Texas, to be carried on from thence against the republic of Mexico.

2. The proof must establish in your minds that the expedition or enterprise was a military expedition or enterprise, and evidence showing that the end and objects were hostile to or forcible against a nation at peace with the United States characterizes it, to all intents and purposes, as a military expedition or enterprise.

3. You must be satisfied from the evidence that the defendant did begin a military expedition, set on foot a military enterprise, as charged in the indictment, or was present, actively aiding and abetting in the commission of the offense, before you can return a verdict against him.

In reaching a conclusion as to the guilt or innocence of the defendant, you will consider all the facts and circumstances in evidence before you. A criminal offense may be established or proved by circumstantial evidence as well as by direct testimony. But, "when the prosecution, in a criminal case, relies upon circumstantial evidence,— that is, upon proof of the facts or circumstances which are to be used as a means of arriving at the principal fact in question,—it is a rule that these facts or circumstances must be proved, in order to lay the basis for the presumption which is sought to be established. Each circumstance essential to the conclusion must be proved to the same extent as if the whole issue rested upon the proof of such essential circumstance." In a case depending on circumstantial evidence,— and the government here partly relies upon evidence of that character,—the rule is that—First, "the hypothesis of delinquency or guilt of the offense charged in the indictment should flow naturally from the facts proved, and be consistent with them all; and, second, the evidence must be such as to exclude every reasonable hypothesis but that of guilt of the defendant of the offense imputed to him; or, in other words, the facts proved must all be consistent with, and point to, guilt, only, and must be inconsistent with innocence."

It is insisted by the defendant that certain witnesses who testified for the government were active participants in the crime charged against him, and that, therefore, their testimony, standing alone and uncorroborated by other evidence which connects the defendant with the offense imputed to him, is insufficient to justify a conviction. You can readily recall the names of those witnesses who testified to their connection with the movement designated by them as the

"Garza Expedition." Some of them are, by their own statements, clearly accomplices, while at least two others claim that they were captured by Garza's men, and were compelled to join the expedition under the pressure of force and threats of violence. If any of the witnesses testifying in the case were constrained or compelled to go with, and remain in, the expedition, because of violence, or threats of violence, offered to them by men engaged in the enterprise,—that is, if they did not join and remain with the expedition voluntarily, but were compelled to do so by men engaged therein,—then they would not be regarded, in law, as accomplices; for an accomplice is a voluntary assistant in a crime. "He is a person who knowingly and voluntarily, and with common intent with the principal offender, unites in the commission of an offense." Bearing in mind this distinction between a person who is an accomplice and one who is not, you are further instructed that whether the testimony of an accomplice be true or false is a question which, like all controverted questions of fact, is submitted solely to you to determine for yourselves. It is not within the province of the court to pass upon controverted questions of fact, or upon questions affecting the credibility of witnesses. But it is the duty of the court to call your attention to certain rules which obtain in courts of justice in reference to these persons known in law as "accomplices." On this point you are instructed "that a particeps criminis,—that is, an accomplice,—notwithstanding the turpitude of his conduct, is not on that account an incompetent witness." It is the settled rule in this country that an accomplice in the commission of a crime is a competent witness, and the government has the right to use him as a witness. It is the duty of the court to admit his testimony, and that of the jury to consider it. The testimony of an accomplice is, however, always to be received with caution, and weighed and scrutinized with great care by the jury; and it is usual for courts to instruct juries—and you are so instructed in this case—not to regard the evidence of an accomplice unless he is confirmed and corroborated in some material parts of his evidence connecting the defendant with the crime, by unimpeachable testimony. But you are not to understand by this that he is to be believed only in such parts as are thus confirmed, which would be virtually to exclude him, inasmuch as the confirmatory evidence proves, of itself, those parts it applies to. If he is confirmed in material parts connecting the defendant on trial with the offenses charged in the indictment, he may be credited in others; and the jury will decide how far they will believe a witness, from the confirmation he receives by other evidence; from the nature, probability, and consistency of his story; from his manner of delivering it, and the ordinary circumstances which impress the mind with its truth. U. S. v. Kessler, Baldw. 22; U. S. v. Reeves, 38 Fed. Rep. 409, 410. With the rules above announced for your guidance, you will give to the testimony of such witnesses as have been shown to be accomplices such weight as you consider it entitled to receive.

As the court has already intimated, you are the exclusive judges of the credibility of witnesses, and of the weight to be attached to their testimony; and, in weighing and considering the evidence before you, you should endeavor to reconcile and harmonize it, if you can. "When

this cannot be done, you must determine for yourselves what portion of the conflicting testimony is most worthy of belief. The court can only give you a few general rules as guides for weighing and deciding between testimony that cannot be reconciled. You should look to the circumstances surrounding the respective witnesses, and the way in which they testify, in considering the weight to be given to their testimony; to their means of information, and opportunity of knowing the facts whereof they speak. * * * You should also consider the manner and bearing of the witnesses in testifying. Do they show a zeal in stating facts favorable to one side, and reluctance in disclosing facts that would benefit the other? Do they testify in that frank, candid, straightforward way which a witness should do, under the solemnity of an oath? Or do they evade or equivocate? You should also look to the consistency of their testimony. * * * You should especially look to the interest which the respective witnesses have in the suit, or in its result. * * * Where a witness has a direct, personal interest in the result of the suit, the temptation is strong to color, pervert, or withhold the facts." Under the foregoing rules you will give to the testimony of the witnesses such weight as in your judgment it should receive.

You are further instructed that the presumption of law is in favor of the innocence of the defendant, until his guilt is established, by the evidence, to the satisfaction of the jury, beyond a reasonable doubt; and if, upon full consideration of all the facts and circumstances in evidence, you entertain a reasonable doubt of his guilt, you should give him the benefit of it, and acquit him. It is difficult to define, in exact terms, the nature of a reasonable doubt. It may be said to arise "from a mental operation, and exists in the mind when the judgment is not fully satisfied as to the truth of a criminal charge, or the occurrence of a particular event, or the existence of a thing. It is a matter that must be determined by the jury, acting under the obligations of their oaths and their sense of right and duty." If, from an examination and consideration of all the facts and circumstances in evidence, taken in connection with the charge of the court, you are satisfied, beyond a reasonable doubt, that the defendant is guilty, as charged in the indictment, you will return a verdict in the following form: "We, the jury, find the defendant, Carmen Ybanez, guilty, as charged in the first and second counts of the indictment." If, however, you find him guilty either under the first or second count, but not guilty as to the other, you will frame your verdict accordingly, indicating under which one of the two counts he is guilty, and under what one he is found not guilty. If your finding be in his favor as to both of said counts of the indictment, you will simply say: "We, the jury, find the defendant not guilty."

It is said, gentlemen of the jury, by the learned judge from whose charge I have already quoted, that—

"The all-pervading object of this neutrality law is peace with all nations,—national amity,—which will alone enable us to enjoy friendly intercourse and uninterrupted commerce, the great source of wealth and prosperity; in short, to prevent war, with all its sad and desolating consequences."

Such being the object of the law, it is the duty of courts and juries to enforce it, whenever the occasion arises, with fairness and im-

partiality, but fearlessly and with firmness. While our own government affords protection and a safe asylum to honest, upright, and liberty-loving people, it has the right to demand, on their part, obedience to law and respect for our international obligations; and although a citizen, or other person living under the influence of American institutions, may enjoy the utmost liberty, consistent with public order, yet that liberty is a liberty regulated by law. It is not an unrestrained license, conferred upon an individual, to violate the law with impunity, and thus produce anarchy at home, or, as the case may be, imperil the amicable relations which may subsist between our own government and that of a friendly foreign power. Men must obey the law, else the social fabric falls. Independent states and nations must discharge their international obligations to each other, if they desire the maintenance of peace, and the continuance of friendly intercourse. The evidence in this case makes it manifest that the executive department of the federal government, with the active assistance and co-operation of the state authorities, has performed its duty in the endeavor to prevent a violation of the neutrality laws, by dispersing armed bodies of men, who, from the inception of the Garza movement until recently, infested the lower portion of this judicial district, and by aiding in the arrest of numerous persons supposed to be offenders against the statute. Let us, also, gentlemen, perform the duty assigned to us. The defendant now on trial is charged with a violation of this law, and it is for you to say whether he is guilty or innocent of the offense. Give the case a fair, candid, and impartial hearing. If he be innocent, do not hesitate so to declare. But if, under the evidence and foregoing instructions, you deem him guilty, then so say by your verdict. The case is now remitted to your keeping. Take it, and render such a verdict as may be just both to the government and the defendant.