### JULIUS LEVY v. FRANK GOLDSOLL ET AL.

#### Decided October 8, 1910.

**1.—Husband and Wife—Separation—Contract to Support.**

A contract between husband and wife for a separation in the future is void; but where the separation has already taken place and is not brought about or induced thereby, an agreement or obligation by the husband to pay the wife a stipulated amount periodically would be valid and binding.

**2.—Evidence—Failure of Party to Answer Interrogatory.**

The failure of a party to a suit to answer a categorical interrogatory bearing upon a material issue in the case, is a fact which may be shown to the jury and considered by them.

**3.—Husband and Wife—Separation—Evidence.**

The issue being whether or not a husband and wife had actually separated at the time a contract of separation was executed, testimony of the wife as to their manner of living considered and held relevant and material.

Vol. LXII Civil—17.

**4.—Same—"Living Together"—Definition.**

. A charge that by the phrase "living together as husband and wife" was meant the dwelling together in the same house, eating at the same table, and holding themselves out to the world and conducting themselves towards each other as husband and wife, held a correct definition of the phrase.

**5.—Same—Contract—Liquidated Damages.**

A bond in a certain amount, secured by pledge of real and personal property, conditioned that the husband would thereafter pay to his wife a certain amount weekly according to the terms of a contract of separation, considered and held, when construed in the light of the facts and circumstances, to evidence an intention by the parties that the amount named in the bond was to be treated as liquidated damages and not as a penalty in case of a breach of the bond. Hence, upon breach of the bond by the husband, the wife was entitled to recover the entire amount of the bond, less such sums as had been paid before the breach.

Appeal from the District Court of Hill County. Tried below before Hon. W. C. Wear.

*Morrow & Smithdeal,* for appellant.—The damages accruing to Lillian G. Levy by reason of the breach of the contract being readily ascertainable by calculating the sum at the rate of $25 per week, it is manifest that the stipulation in the bond fixing the liability at $10,000 was in the nature of a penalty and security for the payment of the installments, and not as a liquidated sum. 4 Am. & Eng. Ency. of Law, p. 699; Wallace v. Terry, 15 S. W., 36; Bignall v. Gould, 119 U. S., 495; 30 L. E., 491; Squires v. Elwood, 49 N. W., 939; Wilson v. Baltimore, 34 Atl., 774; 13 Cyc., p. 101 and note 55; Burill v. Daggett, 1 Atl., 677; Cochran v. People's Ry., 21 S. W., 6.

*T. H. Jackson* and *Vaughn & Hart,* for appellees.

BOOKHOUT, Associate Justice.—This suit was filed May 7, 1909, by Frank J. Goldsoll, for himself and as trustee for Lillian G. Levy, against Julius Levy. It was charged in the petition that the defendant had made an agreement with the plaintiff and Lillian G. Levy by which the defendant had undertaken to pay to the plaintiff $25 per week for the support of his wife, Lillian G. Levy, and had executed a bond in the sum of $10,000 to secure the payment, and that default had been made, and seeking to recover the amount of the bond. The case was tried before a jury on special issues inquiring whether or not the written agreement introduced in evidence was made in pursuance of a previous verbal agreement, and whether or not at the time the agreement was made the defendant and Lillian G. Levy were living together as husband and wife, and whether or not the agreement was made in contemplation of a future separation, all of which inquiries were answered by the jury in the negative. The court entered judgment on the verdict for the full amount of the bond, crediting the defendant with the payments that had been made up to the time of the trial, the judgment entered being for the sum of

$8050. Appellant filed motion for new trial which being overruled, this appeal is prosecuted.

It is contended that the trial court erred in admitting in evidence the articles of separation, dated May 5, 1906, signed by the defendant in the court below, appellant here, over his objection thereto, that the objects and consideration therein set out are illegal and void.

The agreement was made in the City and State of New York on the 5th day of May, 1906, where all the parties thereto then resided. It was between Julius Levy, party of the first part, and Lillian G. Levy, his wife, party of the second part, and Frank J. Goldsoll, as trustee, party of the third part. It recited, among other things, "That whereas the said parties of the first and second part were lawfully married on or about the 5th day of March, 1900, and they have for some time past lived separate and apart from each other, for which the party of the second part had just cause, and she is about to commence an action against the party of the first part for a limited divorce; and whereas the said parties of the first and second part have agreed to settle and adjust their differences and to avoid judicial settlement of the same in court, and have consented and agreed to, and do hereby consent and agree to, live separate and apart from each other in the future, upon the terms, conditions and covenants hereinafter contained; and whereas the said party of the third part has, at the request of the other parties hereto, consented to act as trustee hereunder for the purpose of enforcing the covenants herein contained, and to enter into the obligation and covenants hereinafter contained." The bond then recited the covenants.

It is insisted that the contract was an agreement between husband and wife for their future separation and to live separate and apart from each other, and is therefore void. It is clear 'that a contract between husband and wife for a separation in the future is void, but the evidence in this case shows, and the trial court found, that the husband and wife had separated and were not living together at the time the contract was made. Where the separation exists as a fact and is not produced or occasioned by the contract, the consideration of the husband's agreement to pay is his release from liability for the support of the wife. Galusha v. Galusha, 116 N. Y., 642; Pettit v. Pettit, 107 N. Y., 677. In the case first cited it was said: "But while a contract to separate in the future is void, it is now too well settled, both in England and in this country, to admit of discussion, that after a separation has taken place a contract may be made through the intervention of a trustee which is effective to bind the husband to contribute the sum therein provided for the future support of the wife." The principle announced is supported by authority. There was no error in admitting the contract in evidence. It contains no clause that as between the parties contravenes public policy.

Nor did the court err in admitting in evidence the bond and deed of trust executed by appellant to secure the performance of his part of the

contract. These instruments were parts of the contract between the parties and were properly admitted in evidence.

There was no error in permitting the plaintiff's counsel to read to the jury the sixth, seventh and ninth cross-interrogatories propounded by them to defendant. The evidence on the part of plaintiff disclosed that the parties resided in the same suite of apartments, and that for the purpose of avoiding notoriety and scandal they had maintained the semblance of living together, and it was attempted by the defendant by general statement to establish that they were in fact living together and maintaining their relations of husband and wife, and the questions propounded in the cross-interrogatories sought to elicit the details. Defendant's failure to answer the categorical questions in regard to the details tended to prove a fact which under all the rules of evidence the plaintiff had a right to show.

Again, the evidence and inference deducible from the fact of defendant's failure to answer said questions, if erroneously admitted, could not prejudice the rights of the appellant, the validity of said separation agreement having been established by the immediate separation of the parties, and their continuing to live separate thereafter followed by the divorce in favor of the wife upon grounds existing at the time the agreement was entered into.

The court did not err in admitting the testimony of Mrs. Levy, over appellant's objection that the same was immaterial and irrelevant, as follows: "From the time I separated, or determined to separate, from Mr. Levy, in October, up to the time I actually left the apartment, Mr. Levy and I did not occupy the same room at night. During that time we did not occupy towards each other the relations of husband and wife. During that time we did not occupy the same bed." The evidence was material as tending to prove that there had been a separation of the parties previous to the making of the written agreement.

The appellant requested, and the court refused, a special charge reading as follows: "By the term 'living together as husband and wife,' is meant the dwelling together in the same dwelling place, eating at the same table and conducting themselves toward the world as husband and wife; and in order to establish the fact of living together as husband and wife it is not necessary that the proof should show that they occupied the same bed or that they had sexual intercourse." The appellant sought to have the principle embraced in said charge submitted to the jury for their finding thereon. The court refused the special instruction; also refused to submit to the jury the special issue. The court on this phase of the case instructed the jury as follows: "By the term 'living together as husband and wife,' is meant the dwelling together in the same house, eating at the same table, the two parties, the man and woman in question, holding themselves out to the world and conducting themselves toward each other as husband and wife." There was no error in refusing the requested charge, or in refusing to submit the special issue. The charge of the court as given was correct.

It is insisted that the court erred in rendering judgment for $8050 against the defendant, Julius Levy, because it appeared from the undisputed evidence that the alleged contract to pay the plaintiff $25 a week began the 5th day of May, 1906, and that since the time of the trial of this cause only the unpaid installments amounting to $...... were due, and because the bond sued on and the amount stated therein is in the nature of a penalty and not in the nature of liquidated damages, and there was no proof that it was intended as liquidated damages. The bond was in the sum of $10,000, and stipulated for its payment in installments of $25 per week. At the time of the trial, March 24, 1909, there had been paid $1950, leaving $8050 due on its face. The contention of appellant is that the amount called for in the bond evidences a penalty and not liquidated damages. In respect to this contention the bond is not clear. Its construction depends upon the intention of the parties to it at the time of its execution. This intention is to be determined from the bond itself and from the facts and circumstances surrounding the parties at the time of its execution. 5 Cyc., pp. 753, 754, 757. In addition to the bond and deed of trust securing it, certain other instruments relating to their property were executed contemporaneously with the bond.

After a careful examination of the bond and the circumstances surrounding the parties at the time of its execution we conclude that it was the intention of the appellant to place at the disposal of the trustee, Frank J. Goldsoll, for the benefit of Lillian G. Levy, property of the value of $10,000 in lieu of her claim for alimony, which she contemplated asserting through the courts in a proceeding for divorce. The bond pledged both real and personal property to secure the payment of the several installments stipulated therein to be paid. It further provided that "in the event of default in the payment of such weekly allowance, and such default continuing for a period of sixty days, that such stocks and bonds shall be sold for the highest price obtainable therefor, at the New York Stock Exchange, after giving to the said party of the first part at least thirty days' notice, either personally or by registered mail, deposited thirty days prior to the date of such sale; such notice to contain the date and hour of sale, and the broker or brokers through whom such stocks and bonds or either will be sold; that in the event of default in the payment of such weekly allowance as hereinbefore mentioned on the part of the party of the first part, and in the event of the party of the third part electing to resort to the security, whether real or personal, the said party of the third part shall be at liberty to apply the proceeds of such securities after a sale thereof, after deducting all costs, charges and expenses which may be incurred in and about such sale, to the payment of the sums which may be due, and which may become due from time to time, so far as the same can be applied, and the said party of the first part does hereby covenant and agree to pay the said weekly sum thereafter as hereinbefore provided." The bond contains this express provision: "And it is hereby expressly agreed that the whole

of said principal sum shall become due after default of sixty days in the payment of any of the weekly payments above mentioned and required to be made under and pursuant to the said contract." At the time of the trial there had been a default of more than sixty days in the weekly payments stipulated for therein. In our opinion the court did not err in entering judgment against appellant for $8050, the balance due on the bond. The judgment is affirmed.

*Affirmed.*

Writ of error refused.