**MOORE et al. v. WEST et al.   (No. 6700.)** *

(Court of Civil Appeals of Texas. San Antonio. March 8, 1922. Rehearing Denied April 5, 1922.)

**1. Principal and surety ⚖ 155—Complaint on bond guaranteeing compliance with terms of oil lease held sufficient.**

A complaint, alleging the execution of an oil lease, under which defendants were to begin drilling by a certain date and drill to a given depth, and a bond to secure performance, and that defendants merely erected a derrick, rented a boiler, etc., and dug a hole six or eight inches deep, which was a subterfuge to evade payment of the bond, stated a cause of action on the bond.

**2. Principal and surety ⚖ 59—Lease, bond, and escrow agreement construed together.**

Where a bond, guaranteeing compliance with oil lease, conditions that lessees begin drilling by a certain date and drill to a given depth, was placed in escrow, the lease, bond, and escrow agreement, being contemporaneous, would be construed together.

**3. Principal and surety ⚖ 162(2)—Whether lessees began drilling held question of fact for trial court.**

Whether lessees of oil lands began drilling, as required by the lease and bond executed to guarantee compliance therewith, held a question of fact for the trial court.

**4. Mines and minerals ⚖ 73—Oil lease contract construed favorably for lessor.**

The terms of an oil lease contract are generally construed more favorably for lessor than for lessee.

**5. Appeal and error ⚖ 931(1)—Facts necessary to support judgment presumed, in absence of request for findings.**

In the absence of a request for findings of fact, the trial court's judgment must be given the greatest weight, and every presumption of fact necessary to support his judgment indulged.

**6. Principal and surety ⚖ 81—Erection of drilling apparatus and digging small hole held insufficient compliance with lease, requiring that drilling be begun within certain time.**

Hauling lumber, placing a derrick and other apparatus, and digging a hole six or eight inches deep, held insufficient to show a beginning to drill an oil well pursuant to a lease, so as to relieve lessees' bondsmen from liability.

---

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 24, 1922.

**7. Principal and surety ⊕161—Evidence of actual damages held sufficient to support judgment for amount of lessees' bond.**

Evidence that oil and gas lessors were kept out of the use and control of the leased premises for mineral purposes for six months, within which lessees were to drill to a certain depth, and were prevented from selling the lease for a sum probably twice that contracted for, *held* to show such actual damages as to support judgment for lessors for the amount of lessees' bond.

**8. Principal and surety ⊕163—Sureties entitled to judgment against principals for amount they may be compelled to pay under judgment against all.**

In an action on a bond guaranteeing the beginning and diligent prosecution of drilling operations as provided by the terms of an oil lease, the court, on rendering judgment for plaintiffs, erred in not rendering judgment for the sureties on the bond against the principals for whatever amount they might be compelled to pay under such judgment.

Appeal from District Court, Uvalde County; Joseph Jones, Judge.

Action by Emma S. West and others against W. V. Moore and others. Judgment for plaintiffs, and defendants appeal. Amended and affirmed.

Brooks, Worsham & Rollins, of Dallas, G. B. Fenley, of Uvalde, and W. H. Graham, of Dallas, for appellants.

L. Old, of Uvalde, Geo. C. Herman, of Batesville, and Clamp, Searcy & Clamp, of San Antonio, for appellees.

COBBS, J. This suit was instituted by appellees in the district court of Uvalde county to recover of and from appellants the sum of $10,000. The suit grew out of a transaction whereby appellees leased and let unto W. V. Moore and W. R. Bishop, lessees, for the sole purpose of mining, operating, and exploring for oil and gas, and laying pipe lines, building tanks, power stations, and structures to produce, save and take care of said products, all that certain land situated in the counties of Uvalde and Zavalla described in appellees' petition as a large body of ranch land. The consideration for the execution of said oil lease and drilling contract on said property was that the said Moore and Bishop were to begin the actual work of drilling for oil or gas on some part of said leased premises on or before November 3, 1920, and to diligently prosecute the drilling of said well to a depth of 3,000 feet, unless oil or gas should be found in paying quantities at a less depth. It is not necessary to set out the various provisions of the lease contract. But the lease was not to become effective until the said Moore and Bishop should execute a good and solvent bond in the sum of $10,000, guaranteeing the compliance on their part with said provisions in said lease, and place said contract with the bond in escrow, same not to be delivered until Moore and Bishop had actually and in good faith complied with said drilling clause in said contract, said lease and bond to be disposed of by said escrow agent in accordance with written instructions accompanying the deposit of said contract and bond in escrow.

On the 24th day of May, 1920, appellants, W. V. Moore and W. R. Bishop, as principals, with appellants F. O. Witchell, Otto N. Lang, F. M. Jackson, J. E. Cunningham, H. E. Spafford, H. H. Kidd, J. W. Vilbig, and National Surety Company, as sureties, execute a bond, payable to appellees, their heirs, executors, and administrators, jointly and severally, in the sum of $10,000 conditioned that if the said Moore and Bishop "shall on or before the 3d day of November, 1920, actually begin, or cause to be begun, the drilling of a well for oil or gas on some part of the premises, set forth and described in a certain oil and gas lease dated May 3, 1920," in which the obligees mentioned in said bond are the lessors in said lease, and the principals in said bond are the lessees in said lease, then said obligation to be void, otherwise to remain in full force and effect.

After the execution of said oil lease and drilling contract and said bond, they were delivered to the Commercial National Bank of Uvalde, to be held in escrow until advised by appellee A. W. West that Moore and Bishop had actually begun the drilling of a well on some part of the premises within six months from date of same, or until said bank had been satisfied by good and sufficient proof that said well drilling had begun within the time of said lease, in which event said oil and drilling contract and said bond were to be delivered by said bank to said Moore and Bishop. In the event, however, said bank was advised by said A. W. West that the lessees in said oil lease and drilling contract failed to comply with the terms of said contract in beginning the actual drilling of a well on some part of said leased premises within said six months from the date of said lease, and shall furnish said bank good and sufficient proof of said fact, then said oil lease and drilling contract and said bond were to be delivered by said bank to said A. W. West.

The wording of the letter to said escrow agent was agreed upon by appellees and J. E. Cunningham, acting for W. V. Moore and W. R. Bishop, and said letter written May 3, 1920, a copy of which, together with lease contract, were on said date furnished to appellant J. E. Cunningham. Appellant H. E. Spafford acted for appellants in procuring and delivering to appellees the said bond sued upon. Prior to procuring same he had

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

had in his possession a copy of said letter to said escrow agent, as well as a copy of the lease contract, and all the defendants (appellants) were advised of the contents of said letter to said escrow agent, and of the contents of the lease contract prior to the execution and the delivery of the bond.

That W. V. Moore and W. R. Bishop failed to actually begin, or cause to be begun, the drilling of a well for oil or gas on some part of the premises, as they contracted to do on or before November 3, 1920. Moore and Bishop, appellants, shortly prior to November 3, 1920, caused a derrick to be erected on said leased premises, rented a boiler and engine and certain tools, and dug a hole some six or eight inches or more deep, nothing further being done, but within a few days thereafter said boiler and engine and said tools were removed from said premises, and no attempt to otherwise actually begin, or cause to be begun, the drilling of a well for oil or gas on said leased premises was made before November 3, 1920. That the acts and things done by appellants were a trick and subterfuge and an attempt to evade the payment of the bond.

That after said hole six or eight inches deep had been dug, Moore and Bishop went to Uvalde and demanded of the escrow agent, the bank, the said lease and said bond, but that, said agent not being satisfied, made inquiry as to what had been done, and upon such information refused to deliver the same to them, but retained possession thereof until November 4, 1920, when they were forwarded to appellees' attorneys in San Antonio, Tex. Whereupon demand was made upon each of the appellants that Moore and Bishop had breached the terms of the lease contract and the bond and demanded the payment of said bond.

We have made the statement as full as it is to have a better understanding of what is alleged to meet the demurrers interposed, without hereafter setting out the same in passing on them.

The National Surety Company answered separately from its codefendants, who likewise filed separate answer.

[1] All the defendants, the appellants here, in their separate answers filed numerous general and special exceptions, all of which were overruled. The petition set out a good cause of action independent of allegations complained of that do not materially affect plaintiffs' real right of recovery, based upon sufficient material allegations showing a substantial and real cause of action, and there was no error in the rulings of the court on the several demurrers.

The case was tried by the court without a jury, and the court rendered judgment for appellees in the sum of $10,000. There were no findings of the court requested. A statement of facts was filed.

[2] The real and substantial defense made and urged in the assignments and propositions in this case is that the appellants, the lessees, Moore and Bishop, the principals in the bond, satisfied the terms and obligations in the bond stipulated, when they "began the drilling of a well for oil or gas," as provided in the bond, to which alone, it is urged, we must look, and to no other obligation, expressed or implied from the lease contract or the escrow agreement. It makes no difference, it is argued, how slight that was; it satisfied the bond and entitled them to the lease contract. The lease, bond, and written escrow agreement were contemporaneous agreements, and they will be construed and considered together to arrive at the true meaning and intent of the parties so as to ascertain what facts were necessary to be established to understand what was meant by "to begin the drilling of a well for oil or gas," and what the obligation was to stand for. The language of the lease, to which the bond refers, to guarantee, is:

"Lessees, or their assigns, shall begin actual work of drilling for oil or gas on some part of said leased premises, on or before November 3, A. D. 1920, and shall diligently prosecute the drilling of said well to a depth of three thousand (3,000) feet, unless oil or gas is found in paying quantities at a less depth, and should lessees fail or refuse to complete said well to a depth of three thousand (3,000) feet, unless oil or gas is found in paying quantities at a less depth, this lease shall become null and void."

The condition of the bond is:

"That if the said W. V. Moore and W. R. Bishop, their heirs, executors, administrators, or assigns, shall on or before the 3d day of November, 1920, actually begin or cause to be begun the drilling of a well for oil or gas on some part of the premises set forth and described in a certain oil and gas lease dated May 3, 1920, in which the obligees mentioned herein are the lessors in said lease, and the principals herein are the lessees named in said lease, the said premises being a part of the Ike West ranch situated in the counties of Uvalde and Zavalla, then this obligation to be void, otherwise to remain in full force and effect."

This bond was forwarded to S. S. Searcy, attorney for appellees, by H. E. Spafford, an attorney from Dallas, himself being one of the sureties, in a letter of the 3d of May, 1920. He was the one selected to secure the bond. The lease and bond were deposited by Clamp, Searcy & Clamp in escrow in the Commercial National Bank of Uvalde, Tex. The escrow instrument was in the shape of a letter, and is as follows:

"Commercial National Bank, Uvalde, Texas— Dear Sirs: We hand you herewith the following papers:

"(1) Lease from the West heirs to Messrs. Moore and Bishop.

"(2) Surety bond executed by the lessees in this lease guaranteeing to actually begin the

drilling of a well on some part of the leased premises within six (6) months from the date of said lease, as provided for therein.

"You will please hold these papers until advised by Mr. A. W. West that these parties have actually begun the drilling of a well on some part of said land within said six months, or, until you have been satisfied by good and sufficient proof that said well has been begun within the terms of said lease, in which event, you will deliver said papers, to wit, the lease and bond, to Messrs. Moore and Bishop. In the event, however, Mr. A. W. West advises you that the lessees in said lease have failed to comply with said contract in beginning the actual drilling of a well on some part of the leased premises within said six months, and furnish you with good and sufficient proof of said fact, you will deliver said lease and bond to Mr. A. W. West."

A copy of this letter was sent to Mr. H. E. Spafford in reply to his sending the bond.

It is the contention of appellants that the bonding company nor the sureties can be held bound by any terms of the lease or the escrow letter beyond the letter of the bond. It is obvious from the facts, and the facts found by the trial court to sustain its judgment, that all of said instruments were contemporaneously executed and delivered; that they were considered and acquiesced in and well understood what was to be considered as a beginning to drill for oil or gas; also that they knew or at least required to know, what had been done and what was being done towards beginning to drill, and knew when the surrender of the bond was being demanded. They knew the character of preparation made and the abandonment of further effort on the part of the principal to comply with the contract. These instruments will all be construed together to ascertain the situation of the parties and the object and common purpose to be accomplished thereby. Barber et al. v. Herring (Tex. Com. App.) 229 S. W. 472; 9 Cyc. pp. 580, 581; 6 Ruling Cases, p. 580, par. 240; Dunlap's Adm'r v. Wright, 11 Tex. 597, 62 Am. Dec. 506; Wallis v. Beauchamp, 15 Tex. 303; Taylor v. Hudgins, 42 Tex. 246; De Bruhl v. Maas, 54 Tex. 472; Levy et al. v. Goldsoll, 62 Tex. Civ. App. 257, 131 S. W. 420; 5 Cyc. pp. 754–757; Owings v. Prideaux (Tex. Civ. App.) 229 S. W. 903. The lease contract and letter of instruction were in the possession of Mr. H. E. Spafford, a surety on the bond and a lawyer, about 20 days prior to the execution of the bond to the time Mr. Spafford mailed them with the bond executed.

[3] Mr. A. W. West testified he went down to the location, and they were building a derrick out of a lot of old timber that had been used for a long time. He talked to a man in charge there named Henry, and told him he thought it mighty old lumber. There was nothing there at that time besides this old lumber for the derrick. In the next day or two there was a bull wheel. In a day or two he returned, and this so-called derrick was complete. He carefully examined it, and it was simply sitting on some planks. The bottom four corner posts of the derrick were not anchored in any way, simply sitting upon the ground with some plank on each end to hold it up on the ground, and each post from the top had a little guy wire, and one was tied to a mesquite bush. He passed there the next day. Nobody was there. They had a bull wheel and derrick. Three days later Mr. Moore went to the bank and made affidavit that he had commenced drilling the well down there and had complied with the contract and made demand for the papers. Being informed by the bank, and surprised at the demand, Mr. West notified the bank:

"Do not deliver this bond or contract until I go down and look the thing over."

When he went there, he discovered they had an engine, and it had been fired up. They had a little piece of cable there—the little cable is still on the rig now, just exactly as it was then. The cable is about 200 or 300 feet in length. The boiler had been fired up, and, looking over the derrick, he discovered the little hole in the ground, and measured it with a stick, and it was not over six inches deep. There was no one there, no camp, no provisions made for men, or anything. There was one little wagon-load of wood that had been hauled from Uvalde, and is still there. The hole was six inches deep, and part of it had been scooped out with a shovel. It was about 2½ feet in diameter. The dirt had been thrown up with a shovel, and this drill bit was set right in the hole right on top of the ground. So West told the bank not to deliver the contract and bond. Two days later, he went down there, and found boiler and engine had been removed, and no work of any kind being done, and from that to this day there has never been a man there, and no further work of any description done. There was no slush pit nor any corner blocks. There was one little pulley wheel, with one little piece of cable, a half inch in diameter, not over 200 feet of it. The man, Henry, took this stuff away right afterwards. He is the man who was building the derrick. The derrick is not over 65 feet high, and is still standing there.

The land was tied up by this lease for six months. Appellees claim they could have leased it for twice that much. Prior to November 3, 1920, West had a conversation with Mr. Moore, who came back and wanted an extension of time, which West refused to give him, and also refused to surrender the bond to him until after November 3d had expired, unless they would start drilling prior to November 3d. There is other testimony supporting Mr. West's.

It was shown by Moore's testimony, and his witnesses, that the structure and all its parts were sufficient to continue with the work, and they had at great expense made preparations to continue with the work, and would have, and that he had competent men to do the work, and was anxious to continue with it.

It is clear, after the bank refused, under the instructions of West, to turn over the papers, that he still had ample time in which to begin drilling, as he had not already done so, prior to November 3d, and continue the same in accordance with the contract, as West demanded he should do. As to whether or not the facts showed a beginning within the terms of the contract is a question of fact. The trial court has found from the facts that appellants Moore and Bishop had not made such beginning.

[4, 5] The terms in an oil lease contract are generally more favorably construed for the lessor than for the lessee. It may be, as contended, that Moore and Bishop went to heavy expense to get the derrick up and the lumber and other things requisite to begin the work, but they went no further with their work of a real beginning than shown by the testimony of Mr. West and others, upon whose testimony the court relied and had a right to rely, not overlooking the testimony of appellants and their witnesses. In insisting that the facts here show that the work done constitutes the beginning of the drilling of a well for oil or gas within the purview of the contract and bond, appellants cite, for a definition of beginning, Webster's International Dictionary. There is nothing difficult about the word "begin," or its usual, ordinary, and well-accepted and understood meaning, but there is difficulty about its use as here used. Appellants also cite the following cases in support of their position and construction of the contract on the sufficiency of the beginning: Cox v. Miller, 206 Mo. App. 576, 227 S. W. 652; Terry v. Texas Co. (Tex. Civ. App.) 228 S. W. 1019; Fast v. Whitney, 26 Wyo. 433, 187 Pac. 192; Cockrum v. Christy (Tex. Civ. App.) 223 S. W. 308; Hudspeth v. Producers' Oil Co., 134 La. 1013, 64 South. 893; General Oil Co. v. Crain, 209 U. S. 211, 28 Sup. Ct. 475, 52 L. Ed. 754; U. S. v. Ybanez (C. C.) 53 Fed. 536; State v. Johnson, 24 S. D. 590, 124 N. W. 847; State v. Disbrow, 130 Iowa, 19, 106 N. W. 263, 8 Ann. Cas. 190. A careful reading does not persuade us that they support appellants' contention as made here. As said in Forney v. Ward, 25 Tex. Civ. App. 443, 62 S. W. 108, the general understanding or meaning as to when the boring of a well is begun is a jury question, so in this case the trial judge has found from all the evidence that the drilling of the well had not been commenced within the purview of the contract. He was not requested to make any findings of fact, and

we must give to his judgment the greatest weight and indulge in every presumption of fact found by him necessary to support his judgment. There is no authority shown or cited that would require us as a matter of law to set aside the trial court's function in passing upon that fact, supported, as it is, by all the evidence.

[6] This effort to comply with the contract was delayed to the very last moment, and when West called his attention to the breach he refused, several days before the expiration of the contract, to go further with it. Taking and considering all the facts together, it is apparent that the so-called start prior to November 3d, and the material put there, was not such a beginning to drill a well 3,000 feet as to meet their obligations. Under the authority of Forney v. Ward, supra, we do not believe the hauling of lumber, placing the derrick, and the steps claimed to have been taken looking to the completion of the well, and the work done, showed that the beginning to drill was in performance of the terms of the lease contract, and relieved the bondsmen.

"A lease requiring the work of development to be commenced within a certain time, by drilling wells, requires actual drilling operations to be commenced within the time specified; and the mere erection of drilling apparatus will not be a compliance with its terms." The Law of Oil and Gas (3d Ed.) Thornton, vol. 1, § 147.

[7] Appellants further contend that the pleadings nor the evidence are sufficient to support the judgment. That the contract nor the bond contain any provision that the bond shall be considered as liquidated damages, and under the decisions of our courts such agreements to pay in lump sums are treated as penalties, and cite Wright v. Bott, 160 S. W. 360. An examination of that volume shows no such case there as cited, but, we do find it in (Tex. Civ. App.) 163 S. W. 361, but it does not support the contention. Here actual damages, if necessary, have been shown. Appellees were kept out of the use and control of their ranch for mineral purposes for a period of six months, in which appellants were to begin and continue drilling for oil or gas until a well be drilled 3,000 feet, during which time it is shown appellees were deprived from selling the lease for a sum probably twice as great as that contracted for. Southern Plow Co. v. Dunlap Hardware Co. (Tex. Civ. App.) 236 S. W. 765.

The trial court heard the testimony of the witnesses and rendered judgment in favor of appellees. We find no material reversible error committed, and, believing substantial justice has been done, overrule all the assignments, and affirm the judgment of the trial court as between appellees and appellant.

[8] In the eighth assignment of error the appellants claim that the court erred in not

rendering judgment in favor of the National Surety Company against the other defendants. We sustain this assignment. The judgment of the trial court, as rendered, is affirmed, but as an amendment thereto judgment will be here rendered in favor of the National Surety Company and the sureties on said bond against W. V. Moore and W. R. Bishop, the principals in said bond, for whatever amount they may be compelled to pay under said judgment.

The judgment of the trial court is affirmed, with the addition thereto as hereinbefore indicated.