**LINDSEY et ux. v. WILLIAMS et al.**

No. 6432.

Court of Civil Appeals of Texas. Texarkana.

Feb. 9, 1950.

Edwin M. Fulton, Gilmer, W. C. Hancock, Pittsburg, Geo. W. Allison, Dallas, for appellants.

Florence & Florence, Gilmer, for appellees.

LINCOLN, Justice.

The appellees filed a petition in trespass to try title to Lot 3-B, Block 50 of the Town of Gilmer, as shown by the Freese and Nichols plat allegedly recorded in the deed records of Upshur County. On the same day Mrs. Bert Williams, one of the plaintiffs, through her attorney, filed her affidavit for a writ of sequestration alleging that Mrs. Williams is the owner of the property. Bond having been made and accepted, the writ of sequestration was issued by the clerk of the district court. The return of the sheriff shows that the writ came to hand on March 2 and was executed on the same day by taking into his possession the property described in the petition, Lot 3-B of Block 50 and that said property "is now retained in my custody." The writ was returned and filed on March 2. On March 6, 1946, the defendants in the suit, T. C. Lindsey and Laura Belle Lindsey, his wife, executed their replevin bond with Lawyers Surety Corporation as surety. The replevin bond caption gave the style and docket number of the suit, showed it was pending in the District Court of Upshur County, and in full reads as follows:

"Whereas, by virtue of a writ of sequestration issued out of the District Court of

Upshur County, Texas, against T. C. Lindsey and Laura Belle Lindsey in the above entitled and numbered cause, on the 2nd day of March, 1946, Posey Seago, Sheriff of Upshur County, Texas, has taken the following property found in the possession of the said T. C. Lindsey and Laura Belle Lindsey to-wit:

"Lot 2B, Block 50 of the town of Gilmer, as shown on plat prepared by Freese & Nichols in 1938 and recorded in the deed records of Upshur County, Texas together with the brick building situated thereon, valued at the sum of Seven Thousand Five Hundred Dollars ($7,500.00);

"And the said T. C. Lindsey and Laura Belle Lindsey desire to retain possession of the same;

"Now, therefore, know all men by these presents:

"That we, T. C. Lindsey and Laura Belle Lindsey as principals, and the other persons whose names are subscribed hereto, as sureties, acknowledge ourselves bound to pay to Mrs. Bert Williams, plaintiff in said suit, the sum of $15,000.00, conditioned that the said T. C. Lindsey and Laura Belle Lindsey, defendants, will not injure the property, and that they will pay the value of the rents of the same in case they shall be condemend to do so."

The foregoing bond was accepted and approved by the sheriff on the same day, March 6, and it was filed among the papers of the cause. As a result of the execution and delivery of the replevin bond the defendants were not dispossessed of the property sued for and remained in possession until about May 1, 1947. Final judgment was rendered in favor of the plaintiff Mrs. Bert Williams for the title and possession of the land sued for. The judgment recites that plaintiffs appeared in person and by their attorneys and that the defendants appeared through their attorneys and all parties announced ready for trial. A jury having been waived, the case was tried to the court. Briefly, the findings of the court as appearing in the judgment are as follows:

1—On April 19, 1947, the plaintiffs and defendants entered into an agreement whereby the defendants were to vacate the property, Lot 3-B, Block 50, on or before May 1, 1947.

2—The defendants agreed to pay the plaintiff Mrs. Bert Williams for her damages by reason of their holding the property from March 1, 1946, to May 1, 1947, rents in the aggregate sum of $1,066.74.

3—On April 30, 1947, defendants Lindsey and wife, through their attorney delivered to the attorney for the plaintiffs the keys to the building and the plaintiff Mrs. Bert Williams took actual possession of the property.

4—On March 2, 1946, the plaintiffs sued out the writ of sequestration placing it in the hands of the sheriff, and it was levied upon Lot 3-B; "that said officer placed a value upon said building and property of $7,500.00, that thereafter on the 6th day of March, 1946, the defendants T. C. Lindsey and Laura Belle Lindsey, as principals and Lawyers Surety Corporation * * * as surety entered into a replevin bond in the principal sum of $15,000.00, conditioned that the said T. C. Lindsey and Laura Belle Lindsey, defendants, would not injure the property and that they would pay the value of the rents of the same in case they were condemned to do so."

5—Lindsey and wife did not pay the rents due upon the property during the time that they held the same by virtue of the replevin bond and that there is still due the plaintiff Mrs. Bert Williams the sum of $1,066.74, of which sum $1,057.07 accrued after execution of the replevin bond.

6—The property sued for is the seperate property of Mrs. Bert Williams.

Following these findings, the court gave judgment in favor of Mrs. Bert Williams against Lindsey and wife for the title and possession of Lot 3-B, and also rendered judment in favor of Mrs. Williams and against the defendants for $1,066.74, with interest after May 1, 1947, at 6%, and against the defendants and the surety on the replevin bond for $1,057.07, being the rents due after execution of the replevin bond, the judgment also carrying the costs of the court against the defendants Lindsey. It was further ordered that all proper and

necessary writs issue for the enforcement of the judgment. To the action of the court in entering this judgment "the defendants excepted" and gave notice of appeal to this court. Separate appeal bonds were filed by the defendants and by the surety company. The only statement of facts brought up on this appeal is that which was made on hearing of the motions for new trial. It must be assumed that on the original trial the evidence was sufficient to support the judgment.

The first and most serious points raised on this appeal are that the replevin bond described Lot 2-B, the obligation in the bond being to pay the value of the rents of Lot 2-B in case the defendants should be condemned to do so, that the defendants never replevied Lot 3-B, and that the judgment against the defendants and the surety company for the rents on Lot 3-B is contrary to and beyond the terms and conditions of the bond. After serious and painstaking study of this question we have reached the conclusion that the points of error cannot be sustained. Statutory authority and grounds for issuance of writs of sequestration are conferred by Art. 6840, R.S. of Texas. Since adoption of the Texas Rules of Civil Procedure, all statutory provisions governing procedure in such cases have been supplanted by the Rules. Rules 696–716. These rules in most instances are in the same, or substantially the same language as the former statutes. The first step to obtain sequestration after suit has been filed, is the filing of an affidavit, Rule 696, and it is required that the property to be sequestered "shall be described with such certainty that it may be identified and distinguished from property of a like kind." The party applying for the writ is required to make a bond to be approved by the officer authorized to issue the writ, in the amount and payable and conditioned as provided by Rule 698. There is no requirement that the property be described in the sequestration bond. The issuance of the writ and its requisites are provided for in Rule 699, and one of the requirements is that the writ shall describe the property as it is described in the affidavit. Rule 701 gives the defendant in sequestration the right to replevy the property, and reads as follows: "When property has been sequestered, the defendant having possession of such property at the time the writ of sequestration was levied shall have the right to retain possession of the same by delivering to the officer executing the writ, his bond payable to the plaintiff, with two or more good and sufficient sureties, to be approved by such officer, in an amount not less than double the value of the property to be replevied." Rule 702 sets forth the conditions of the replevy bond where the property to be replevied is personal property. Rule 703 states that "If the property be real estate, the condition of such bond shall be that the defendant will not injure the property, and that he will pay the value of the rents of the same in case he shall be condemned so to do." Thus it is seen that the only instruments which require a description of the property are the affidavit for the writ, and the writ itself. If the legislature had intended to require that the property must be described in the other proceedings, such as in the bond for sequestration and in the replevin bond, the presumption is that it would have inserted such requirement when it enacted the statutory provisions in force prior to adoption of the Rules of Civil Procedure. In like manner, if the Supreme Court, or its Advisory Committee which compiled the Rules, had deemed it important to describe the property in said bonds, it could and would have inserted the few words necessary for that purpose.

■ There is sound reason why the property need not be described again in the replevin bond, and, for that matter, in the sequestration bond. The affidavit constitutes the application. It is, of course, necessary that the application for a writ to seize specific property must describe that property so that, in the language of the Rule, it may be identified and distinguished from property of a like kind. The writ commands the officer to seize the specific property. To enable him to carry out the writ, it must also describe the property, and the requirement is complied with when it is described as in the affi-

davit (the application). Each of these various steps in sequestration is part and parcel of one objective, namely, to have the property seized by the officer and held during the pendency of the suit. Levy v. Goldsoll, 62 Tex.Civ.App. 257, 131 S.W. 420, writ refused. Each step has its own test of legal correctness. But when it meets that test it is not necessary to repeat the requirements of prior steps in the next one. For instance, the statute, Art. 6840, names the grounds upon which sequestration must rest. The application (affidavit) must state one or more of those grounds. Its validity, and the validity of the entire proceedings, are tested by compliance with the requirements of Art. 6840. But when those requirements have been met it is not necessary to set them up again in the additional instruments.

Each of these steps constitutes a directive in the accomplishment of one purpose, to seize and hold the property. The affidavit, the bond for sequestration, the writ, the seizure, and the officer's return are all to be read and considered together as parts of one proceeding. The trial court has them all before him. They constitute the "face of the record" in the sequestration proceedings. Each must meet the legal requirements, and when done each and all of them may be looked to in aid of the whole sequestration proceeding. "Bonds and other instruments executed as a part of the same transaction are to be construed together. * * * Instruments referred to in a bond for a specific purpose become a part of it for that purpose." 7 Tex. Jur. p. 85; Sullivan v. City of Galveston, Tex.Civ.App., 17 S.W.2d 478, Tex.Com. App., 34 S.W.2d 808. This holding is further supported in Harding v. Jesse Dennett, Inc., Tex.Civ.App., 17 S.W.2d 862, writ refused, and in Pinkard v. Hobbs Mfg. Co., 168 S.W.2d 539, writ dismissed, these cases holding in effect that a variance in description will not defeat liability on the replevin bond, but that the whole record may be looked to in aid of a correct description.

The Rules, which now have the force and effect of law, provide that the defendant in sequestration may replevy the property seized. He is not required to do so, but when he does, his act in this respect also becomes a part of the ancillary record. It must be read and considered as an integral part of that record, along with all other steps. The Rules provide, as did the former statutes, that in case the suit is decided against the (sequestration) defendant, final judgment shall be entered against all the obligors in the replevin bond, jointly and severally, for the value of the property and of rents thereof. The trial court must therefore look to the whole sequestration record to determine its validity for purpose of the final judgment. A great deal has been written in Texas on the question of whether the sureties in a replevin bond make themselves parties to the suit, and if so to what extent. We think it is now well settled that the sureties on such bond do make themselves parties to the suit to a limited extent. No pleading is necessary to authorize judgment against the sureties on a replevin bond, where judgment goes against their principal. Rule 704, R.C.P.; Wandelohr v. Grayson County National Bank, Tex.Civ. App., 106 S.W. 413, affirmed 102 Tex. 20, 108 S.W. 1154; Morris v. Anderson, Tex. Civ.App., 152 S.W. 677. In Lawyers Lloyds of Texas v. Webb, 137 Tex. 107, 152 S.W.2d 1096, 1098, it is held: "It is true that the sureties on the replevy bond (in sequestration) are parties to the suit in a limited sense, so as to authorize judgment against them on their bond in the event of a judgment against their principal".

If the sureties are parties to the suit to the limited extent of the sequestration proceedings, then they are bound by all of such proceedings. When the trial court looked to and considered all the record he found that the surety in this case signed the replevin bond for the purpose of having Lot 3-B returned to the possession of the Lindseys, its principals, to be held by them during the pendency of the suit. In so doing the trial court was properly performing its judicial function.

But the judgment may be upheld upon an additional ground. Appellants

assert the bond must be considered from its four corners only, and it discloses that the Lindseys replevied Lot 2-B and not Lot 3-B. If the description were required to be inserted in the replevin bond, and if we could not look to its recitals, appellants might be correct about that. But references are made to all the prior proceedings, the style and number of the case, etc., as will be seen from the bond itself. When we go to the instruments referred to we find them referring to and describing Lot 3-B, whereas, the specific description in the bond was Lot 2-B. This ambiguity permits of extrinsic evidence. "If the bond is ambiguous or its meaning doubtful, it will be construed in the light of the purpose to be accomplished by it, and the situation of the parties and the circumstances surrounding them when it was executed." 7 Tex.Jur. p. 83; Witherspoon Oil Co. v. Randolph, Tex.Com.App., 298 S.W. 520. As there is no statement of facts before us to show what took place on the original trial of this case, we must conclusively presume that all facts were found in support of the judgment upon evidence legally admissible. No error is assigned that extrinsic evidence was or was not offered, or that it was not sufficient to support the trial court's judgment. On the other hand, in the hearing of the motions for new trial, evidence was heard. The entire ancillary record was introduced. It shows, of course, that Lot 3-B and not Lot 2-B was in controversy, and that Lot 3-B was sequestered. It was also shown that as a result of the replevin bond having been given and approved, Lot 3-B was returned to the possession of the Lindseys. It was stipulated in the record on the hearing of said motions that the sheriff of Upshur County did not have a writ of sequestration for any property in this suit except Lot 3-B. If it was incumbent on the trial court to ascertain the intent of the defendants and their surety in the execution and delivery of the replevin bond, this court must assume that the trial court did that in keeping with its power to do so, and there was no error committed in rendering judgment against the defendants and their surety.

■ The appellants next assert that the judgment is erroneous because the return on the writ shows the property was still in the hands of the sheriff, that such statement in the return is conclusive and is not subject to contradiction, that the return shows that Lot 3-B was never replevied, and that therefore the judgment against the defendants and the surety for rents is void. We overrule that contention. The whole record discloses that Lot 3-B was levied on and was returned to the possession of the defendants when the replevin bond was approved by the sheriff. This fact was certainly well known to the defendants themselves. They are not in a position to urge any such contention. The trial court finds in his judgment that the writ was levied upon Lot 3-B, that the replevin bond was executed and this property was returned to the possession of the defendants. The judgment also presents the finding that the defendants agreed with the plaintiff Mrs. Bert Williams that they were indebted to her in the sum of $1,066.74 for rents during the time that they had possession of the property up to May 1, 1947. So far as the named defendants are concerned the point is certainly not well taken.

■ The return of the writ is dated March 2, 1946. It shows that the writ came to the hands of the sheriff on that day, the levy was made, and it was returned and filed in the office of the district clerk on that day. The statement in the return that the property "is now retained in my custody" must be read and construed as of the date of the statement, March 2, 1946. The replevin bond was not made until March 6, and was accepted on that day. The return on the bond is conclusive upon the parties, or at least is prima facie, of the facts stated therein, but not as to facts not stated therein. 54 C.J. 494, Sec. 151. The return is conclusive that Lot 3-B was levied upon, and there is no contradiction of that fact. It is also conclusive of the statement that on March 2, 1946, Lot 3-B

was in the sheriff's possession. There is no statement in the return that a replevin bond was or was not given, nor that Lot 3-B was or was not returned to the possession of the defendants, so the return itself would not be conclusive nor even prima facie as to those facts, and the true facts may therefore be proved. We must assume this was done in trial of the case. On hearing of the motions for new trial the facts were again proven that the replevin bond was executed and Lot 3-B returned to the possession of the defendants. Hannon v. Henson, Tex.Civ.App., 7 S.W. 2d 613; Clark v. Sublette, 117 Mo.App. 519, 94 S.W. 733.

Appellants next assert that to authorize the judgment rendered, there must be pleading and proof that the parties to the replevin bond intended it to cover Lot 3-B, and that the description of Lot 2-B was written into the bond by mutual mistake; and further, there must be pleading and proof requiring a reformation of the bond; and none of these having been done, the judgment was void as against the surety. We believe that previous discussions of the questions raised show the views we hold with reference to this contention, and the point is overruled.

■ Appellants next assert that the bond does not comply with Rule 701, R.C. P., because it is payable to only one of the plaintiffs. The suit was brought by Mrs. Bert Williams, joined pro forma by her husband, Klough Williams. The allegation is made in the affidvit that Mrs. Bert Williams is the owner of the property and is entitled to the possession thereof. The record as a whole shows that the property sued for and involved in the sequestration proceedings was her separate property. The trial court so found. Rule 701 contains no requirement that where there is more than one plaintiff the bond must be made payable to all of them. We see no reason why there might not be two or more plaintiffs and the sequestration issued upon the application of only one of them. We find nothing in the statutes, Rules or decisions which requires the joinder of all plaintiffs in an ancillary sequestration where the property sought to be subjected to the writ may belong to only one of them. The other plaintiffs may have no interest in sequestration proceedings, no grounds therefor, or no desire to join in the proceedings. Our considered opinion is that the writ is available to any person desiring to sue out a sequestration if he has the required status and grounds for doing so and deems it to his interest. In such event the bond and writ must follow the application, and a replevin bond must likewise be made in terms of these. Accordingly, this point is overruled. See McLeod Artesian Well Co. v. Craig, Tex. Civ.App., 43 S.W. 934.

Appellants further assert that the judgment shows upon its face that the recovery for rents was the result of a compromise agreement between plaintiffs and defendants, without the knowledge or consent of the surety and by reason thereof the surety was released and discharged.

■ It is the general rule that the surety must leave the conduct of the case to the defendants and it is not permitted to contest the liability of the defendants to the plaintiff. Lawyers Lloyds of Texas v. Webb, Tex.Civ.App., 154 S.W.2d 867, and cases cited therein. The surety not being a party to the suit for all purposes, he cannot object to an agreed judgment. The judgment in this case was authorized and there is no claim that the compromise agreement was induced by fraud. For all intents and purposes the judgment was binding upon the defendants. The surety is estopped from going behind the judgment in this respect unless he can allege and prove fraud or collusion. The condition of the bond was that the obligors would pay to the plaintiff all rents if the defendants were condemned to do so. The judgment of the court is conclusive that the plaintiffs' demand for rent was just and that the agreement was not tainted by fraud. There was, therefore, no error in the rendition of the judgment against the surety upon the replevin bond and this point is overruled. See Siddall v. Goggan, 68 Tex. 708, 5 S.W. 668; United States Fidelity & Guaranty Co. v. Clifton, Tex.

Civ.App., 250 S.W. 1056. In the case last cited there is a full discussion of this question with citations of authorities.

This disposes of all the points raised by appellants. The judgment against the defendants, T. C. Lindsey and Laura Belle Lindsey, for title and possession of the property sued for, and for the sum of $1,066.74, with interest and costs, is affirmed. The judgment against said defendants and the surety on the replevin bond for $1,057.07 would be a double recovery, and said judgment in this respect is modified to the extent that of the sum of $1,066.74 decreed against the defendants, $1,057.07 of said sum shall be adjudged against said defendants and the surety on the replevin bond, jointly and severally, and as so modified said judgment is affirmed. The costs of this appeal are adjudged against the appellants.